No. 94-439

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

ELMER UNRUH,

        Plaintiff, Respondent, Cross-Appellant,

-v-

WILLIAM TASH and TASH T DIAMOND
LIVESTOCK, INC.,

        Defendants and Appellant.

FILED

MAY 23 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Roy C. Rodeghiero, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        Jon Metropoulos, Helena, Montana

      For Respondent:

        W. Cecil Jones, Thomas R. Scott, Dillon, Montana

Submitted on Briefs:  February 9, 1995

Decided:  May 23, 1995

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal and cross-appeal from a Fifth Judicial District Court, Beaverhead County, order granting the defendant's motion for summary judgment in a prescriptive easement action. We reverse and remand.

The following are issues on appeal and cross-appeal:

APPEAL

1. Did the District Court err in denying attorney fees to the defendant William Tash (Tash) pursuant to § 70-17-112, MCA?

CROSS-APPEAL

1. Did the District Court err in granting summary judgment in favor of Tash, finding a prescriptive easement for the use of the ditch and a prescriptive right to overflow water onto a portion of plaintiff Elmer Unruh's (Unruh's) land?

2. Did the District Court err when it failed to have a record of the summary judgment hearing?

3. Did the District Court err in adopting Tash's Findings of Fact, Conclusions of Law, and Order verbatim?

FACTUAL BACKGROUND

The plaintiff, Unruh is the owner of 12.6 acres of real property located in the SE1/4 NE1/4 Section 33 Township 7 South Range 9 West M.P.M., purchased in 1989. The defendant Tash owns property immediately east of plaintiff's property, with both properties adjoining each other with a border running north-south for approximately 932 feet. The object of this litigation is a lateral ditch which adjoins the Van Camp ditch, a major ditch which

2

forms the western border of the plaintiff, Unruh's property. The Van Camp ditch carries water from the Beaverhead River to several ranches, including Tash's ranch. The only written information affecting the lateral ditch and its current placement is a 1944 agreement between predecessors of the plaintiff and defendant and a sale deed between the plaintiff's remote predecessor and the State. The Van Camp ditch was realigned in 1944 pursuant to a written agreement between Emily Tash, Edna Wheat, and Norman and Blanche Downing (Unruh's remote predecessors). The agreement provided for an easement to the grantees (Wheat and Tash) for the purpose of constructing, maintaining and repairing said ditch. Moreover, the easement provides that the parties may carry, conduct and convey the waters flowing or to flow therein to the lands of the grantees. As a result of realigning the Van Camp ditch, the lateral ditch had to be "continued" to connect to the realigned Van Camp ditch. The newly located lateral ditch consisted of portions of the old lateral ditch and a portion of the old Van Camp ditch.

In 1954, the State of Montana bought land from the Downings for the purpose of relocating Highway 278. The result of the highway construction was that the headgate of the lateral ditch had to be relocated and a new lateral ditch built. A special consideration in the Bargain and Sale Deed stated that "[h]eadgate at Sta [Station] 2284+60, approximately, to be removed by contractor, and to be replaced by owner (Tash Ranch Co.)." A new headgate was installed and the new lateral ditch was built using a portion of the original lateral ditch and a small portion of the

3

old Van Camp ditch.

Testimony regarding use of the lateral ditch is in the form of several affidavits. According to the affidavit of Herb Wheat, who has lived in the area since 1913, the lateral ditch has been in use as long as he can recall, with an overflow of water at the northeastern end of the ditch. Gerald Jones' affidavit states that since 1970, he has leased land and the Van Camp ditch from Herb Wheat and he recalls the use of the lateral ditch in the 1970s. He could not testify to its use in the last 10 years but had no real reason to check the ditch during that time period. However, he had no reason to feel the ditch had been abandoned.

Bill Ballard stated in his affidavit that the water in the lateral ditch had been used by Tash in the past in a manner which caused some overflow onto both Tash's and Unruh's lands. Finally, Jim Allen also stated that the lateral ditch was in use when he managed a horse ranch which included Unruh's land from 1979 to 1989 and the water in the lateral ditch was used by Tash in a manner which included overflow on both Tash's and Unruh's properties.

In his amended complaint filed on May 21, 1991, the plaintiff asserted that: 1) the ditch in contention was abandoned by Tash's predecessors in the April 20, 1944 document; 2) that the ditch had not been used for over ten years and consequently, the right to use the ditch had been extinguished; and 3) any right of the defendant to use the ditch was by consent and the plaintiff has since revoked his consent to use of the ditch by defendant.

Tash contended that he possessed a prescriptive easement to

4

use the ditch in question and use it in the manner in which he had used it for over twenty years (i.e. overflowing the ditch) when water was available and needed. He further has contended that his right to use the ditch was not by license or consent. He asserted that if the Downings, Unruh's predecessor in interest, had given a license for such use, the license had been extinguished in 1972 when the property was conveyed and use of the ditch from 1972 to 1977 was adverse to the new owners and therefore, if a prescriptive easement had not been acquired previously, it had been acquired between 1972 and 1977. Also, Tash states that Unruh recognized Tash's ownership rights in the ditch when he "ceased [his] attempted realignment of the ditch and sought [Tash's] permission to place a culvert in the original ditch."

In an order dated July 10, 1991, the District Court concluded that Tash had an easement to use the ditch in the manner in which it had been used in the past, allowing the water to overflow the ditch onto Unruh's property. Moreover, the District Court concluded that Tash had not abandoned any right to use the ditch. Further, the District Court, although stating that the above holding disposed of the matter, also concluded that the plaintiff had failed to meet his burden of proving that the overflow of water was the proximate cause of his damages. Finally, the District Court concluded that the damages sought by the plaintiff were too speculative since his proposed business was a new business.

Following the entry of summary judgment in favor of Tash, Tash requested an award of attorney fees. In a memorandum filed April

5

1, 1992, the District Court denied Tash's motion for an award of attorney fees, stating that there was no encroachment or impairment of the easement by Unruh's actions nor did Unruh limit Tash's access to his ditch easement. Finally, the District court concluded that "adjudication of contested rights in a ditch easement does not constitute encroachment or interference and does not impair the ditch owner's rights." This appeal by Tash and a subsequent cross-appeal by Unruh followed.

## STANDARD OF REVIEW

Our review of a summary judgment motion is the same as that of the District Court; it is a de novo review. Roe v. Corbin Water Users' Ass'n. (1994), 267 Mont. 503, 885 P.2d 419. Summary judgment is proper only when there are no genuine issues of material fact existing and the moving party is entitled to judgment as a matter of law. Roe, 885 P.2d at 420.

## DISCUSSION

### CROSS-APPEAL ISSUE ONE - SUMMARY JUDGMENT

Unruh asserts that the District Court erred in granting summary judgment to Tash, concluding that Tash had a prescriptive easement to the ditch in question and a prescriptive right to overflow the ditch. Tash contends that "Unruh does not and cannot seriously contest that the elements of open, notorious, continuous use for five years have been established." Tash argues that adversity is the only issue in the instant case.

> To establish an easement by prescription, the party claiming an easement "must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period. The

6

statutory period is five years." The burden is on the party seeking to establish the prescriptive easement. "All elements must be proved in a case such as this because 'one who has legal title should not be forced to give up what is rightfully his without the opportunity to know that his title is in jeopardy and that he can fight for it'."

"To be adverse, the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owner of the land." "If the owner shows permissive use, no easement can be acquired since the theory of prescriptive easement is based on adverse use."

Public Lands Access Assn, Inc. v. Boone & Crockett Club Foundation, Inc. (1993), 259 Mont. 279, 283-84, 856 P.2d 525, 527. (Citations omitted.) The elements of a prescriptive easement were defined in Rappold v. Durocher (1993), 257 Mont. 329, 849 P.2d 1017, as follows :

"Open and notorious" is defined as "a distinct and positive assertion of a right hostile to the rights of the owner and must be brought to the attention of the owner." "Continuous" means "it is necessary to have use made often enough to constitute notice of the claim to the potential servient owner." "Uninterrupted" means "use not interrupted by the act of the owner of the land or by voluntary abandonment by the party claiming the right."

"An Exclusive use means that the claimants' right to use the right of way is independent of a like right of way in another."

Rappold, 849 P.2d at 1019. (Citations omitted.)

We now apply the factual information provided to determine whether there are any genuine issues of material fact as to Tash's claim to a prescriptive right to the ditch in question. Tash's testimony to the effect that he had an easement by prescription was as follows:

First, Tash provided an affidavit from William Ballard who

7

leased the property now owned by Unruh from 1978 to 1984. Ballard stated that at the time of his lease, the ditch appeared to be in place and of long standing use. He specifically recalls the use of the ditch by Tash and overflow of water onto the property several times during his lease of the property.

Second, Jim Allen testified through an affidavit that he was the ranch manager for a horse ranch which included the property now owned by Unruh. During that time, Allen recalls the use of the ditch by Tash several times, including overflow onto the surrounding property.

Third, Herb Wheat is the owner of land just to the north of Tash's ranch and has lived in the area since 1913. He is part owner of the Van Camp ditch. Wheat testified through his affidavit that Tash had used the ditch in a manner which included the overflow of water at the northeastern end of the ditch for as long as he could remember.

Fourth, Tash also provided the affidavit of Gerald Jones who has leased property and shares in the Van Camp ditch from Wheat since 1970. Jones recalled seeing the lateral ditch in use by Tash several times during the 1970s. He also stated that although he has no specific recollection of seeing the ditch in use in the last 10 years, he has no reason to infer it has been abandoned or unused. He has had no occasion to check its use.

Fifth, Tash, himself stated in an affidavit that the lateral ditch was used to flood irrigate 15 acres of his property east of the ditch. He further asserted that the ditch use has included

8

overflow at the northeast end of the ditch. Finally, Tash stated that the ditch has been used when necessary and when water was available since it was built including numerous occasions in the last 14 years.

Sixth, he stated in his deposition that the lateral ditch could serve no others. In the 1991 deposition, he further stated that he had performed routine maintenance and had deepened the ditch in the last 10 years. Moreover, Tash described Unruh's attempt to realign the ditch with a backhoe. He stated in his deposition that after Tash objected to the realignment, Unruh filled in the area upon which he had worked.

Seventh, Tash offered the Bargain and Sale Deed conveying land from the Downings to the State for the purpose of building the highway over that area of land. The document states, under "Special Considerations" that "Headgate at Sta 2284+60, approximately, to be removed by contractor, and to be replaced by owner (Tash Ranch Co.)."

Tash also offered the 1944 agreement between Edna Wheat, Emily Tash and the Downings which stated:

> NOW THIS INDENTURE WITNESSETH, that for and in consideration of the benefits to accrue to the parties hereto by the changing of the location of the Van Camp Ditch and for other good and valuable consideration, the receipt of which is hereby acknowledged, the grantors hereby give and grant to the grantees a perpetual right of way and easement for the construction and maintenance of a ditch over, across and upon the said Southeast Quarter of the Northeast Quarter of Section 33, Township 7 South, Range 9 West, M.P.M. Beaverhead County, Montana, said ditch to be constructed upon a line agreed upon by the parties hereto and which said line is approximately 300 feet west of the present Van Camp Ditch, said ditch so to be constructed shall be 8 feet in width and 2 feet

9

or more in depth and of sufficient capacity to convey therein all of the waters of Beaverhead River decreed to the Grantees and all waters from any other source owned by the grantees or acquired by them from any source, and the grantees their agents and servants shall have, and they are hereby expressly given the right to enter upon the lands of the grantors when and wherever necessary for the purpose of constructing said ditch and forever maintaining and repairing said ditch and carrying, conducting and conveying the waters flowing or to flow therein to the lands of the grantees.

Unruh, on the other hand, provided the testimony through deposition, of Ronald Johnson, a previous owner of the property and a partner in farming the property with his brother Frederick, Unruh's immediate predecessor. Johnson stated that he bought the property in 1978 with Bob Mountain and sold the property to Sullivan in 1984. Johnson managed the property for Sullivan from 1984 until 1986. Johnson remembered no water running through the lateral ditch at that point in time. From 1986 until Frederick Johnson purchased the land (Unruh's land) in 1989, he does not remember paying attention to the ditch and does not remember water running through it on his daily travels past the ditch. He further stated that he watched it much closer prior to 1986 and that "to the best of my recollection, there has never been water that has run through there."

Elmer Unruh was deposed on February 22, 1991. He stated that he felt that Tash had abandoned the ditch and that Tash had no right to use the ditch in any manner. Although Unruh stated that he inspected the property before purchasing it and the ditch appeared to be abandoned, he does not recall checking the headgate. He admitted that Tash claims he has used the ditch in the past on

10

only provided conclusory statements that the ditch was used and that such use included overflow of the water onto the surrounding property. Conclusory statements are not sufficient to create a genuine issue of material fact. Thornton v. Songstad (1994), 263 Mont. 390, 398, 868 P.2d 633, 638.

Moreover, there is no testimony that the use of the ditch was either permissive or adverse, merely that Tash used the ditch. "To be adverse, the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to and acquiesced in by, the owner of the land." Warnack v. Coneen Family Trust (1994), 266 Mont. 203, 208, 879 P.2d 715, 719. (Emphasis added.) Moreover, "[w]hile a presumption of adverse use or adversity arises once the claimant establishes open, notorious, exclusive, continuous, and uninterrupted (unmolested) use for the full statutory period, it remains the burden of the easement claimant to prove each of those remaining elements of prescription, and unless and until the claimant proves those elements under the general rule, the burden does not shift to the land owner to prove permissive use or license." Warnack, 879 P.2d at 723. (Citations omittted.) Finally, "[a]dverse use or adversity cannot, however, be presumed from the claimant's inability to prove those remaining elements of prescription; if those elements are not proven, then the presumption of adverse use or adversity never springs into existence." Warnack, 879 P.2d at 724.

In the instant case, Tash did not provide adequate testimony

12

from which it could be determined that the elements of open, notorious, and continuous use could be satisfied. We conclude, therefore, that genuine issues of material fact remain as to whether Tash's use of the ditch was open, notorious, continuous and adverse. We hold that the District Court erred in granting summary judgment to Tash on the issue of whether he had established a prescriptive easement.

## APPEAL ISSUE ONE - ATTORNEY FEES

Tash argues that Unruh interfered with, encroached upon and impaired Tash's easement by physically rerouting the ditch, breaking the ditch bank, denying access to the ditch, conditioning access to the ditch and initiating litigation in which Tash was forced to defend his easement right. Tash further asserts that he had to forego at least one irrigation opportunity because of the litigation. He argues that under Kephart v. Portmann (1993), 259 Mont. 232, 855 P.2d 120, sufficient impairment has occurred to warrant an award of attorney fees. Unruh counters that encroachment or impairment requires more action than merely instituting a legal action against the alleged easement owner. Further, he contends that he has made every effort "not to encroach or impair the use of the lateral ditch by Tash;" neither has he refused access by Tash to the lateral ditch.

However, because we are reversing the District Court on its decision granting summary judgment to Tash on the issue of whether he had established a prescriptive easement, we need not address the issue of attorney fees. This issue must be resolved by the

13

District Court based upon its ultimate determination at trial. We remand the issue of attorney fees to the District Court for a final determination.

It would also be premature to discuss the issue of Unruh's damages because the case is being reversed and remanded back to the District Court. The lower court must address issues of damages when the action returns to the District Court for a final determination.

CROSS-APPEAL ISSUE TWO - LACK OF RECORD ON APPEAL

Because we reverse and remand this case on the central issue of whether there exists a prescriptive ditch easement, the issue of lack of record is necessarily moot.

CROSS-APPEAL ISSUE THREE - ADOPTION OF ORDER VERBATIM

Unruh also contested the District Court's adoption of Tash's proposed order on cross-appeal. This issue, too, became moot because of our decision to reverse the District Court on the case's central issue.

REVERSED AND REMANDED for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

14

May 23, 1995

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Jon Metropoulos
Attorney at Law
Power Block Bldg., Ste. 0
6th & Last Chance Gulch
Helena, MT 59601

W. Cecil Jones and Thomas R. Scott
Attorneys at Law
P.O. Box 166
Dillon, MT 59725

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy