FILED

February 5 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0261

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 41

MEADOW LAKE ESTATES HOMEOWNERS
ASSOCIATION,

      Plaintiff and Appellee,

v.

DANIEL SHOEMAKER, an individual, and JANE
SHOEMAKER, an individual, and JOHN DOES I-X,

      Defendants and Appellants.

FILED

FEB 0 5 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV 00-334
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Quentin M. Rhoades, Sullivan, Tabaracci & Rhoades, P.C., Missoula,
Montana

    For Appellee:

        Martin S. King, Worden, Thane, P.C., Missoula, Montana

Submitted on Briefs: May 31, 2007

Decided: February 5, 2008

Filed:

_____
               Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Daniel Shoemaker and Jane Shoemaker (the Shoemakers) appeal from the District Court's order granting summary judgment to Meadow Lake Estates Homeowners Association (the Association). We affirm.

¶2 The Shoemakers present the following issues for review:

¶3 1. Whether the District Court properly determined that the Shoemakers had waived the affirmative defense of statute of limitations.

¶4 2. Whether the District Court improperly resolved a genuine issue of material fact in granting the Association's motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Meadow Lake Estates is a residential development located in Ravalli County. Developers of the subdivision intended to preserve the "natural beauty, primitive characteristics, and seclusion" of the property by filing a Deed of Restriction with the Ravalli County Clerk and Recorder in August 1979. The Deed of Restriction set forth a variety of land use limitations on property owners within the subdivision, including the prohibition of commercial activities not "compatible with the residential nature and characteristics of the area." The Deed of Restriction reserved easements on all existing roads within the subdivision for the "scenic views and enjoyment" of the property and for the "reasonable general use" by all subdivision property owners to access public lands.

¶6 The Shoemakers bought three tracts of land in the Meadow Lake Estates subdivision

in 1984. The Jack Creek access road encumbered the Shoemakers' property at the time of their purchase. The Shoemakers promptly erected a gate across the road where it intersected with their property. When locked, the gate blocked vehicular access to public lands on the other side of the Shoemakers' tract. The Association demanded in 1987 that the Shoemakers unlock or remove the gate because it was interfering with the property owners' access to public lands. The Shoemakers refused. The Shoemakers warned the Association that it would have to initiate legal action to resolve the issue surrounding the locked gate. The Association took no immediate action.

¶7 The Shoemakers then launched an outfitting business from their property in 1988. The business operated under an outfitter license and provided guided hunting trips in eastern Montana. The business also occasionally guided hunters on the public lands near the Shoemakers' property. The Shoemakers ceased operations after several years of business.

¶8 The Association filed a complaint against the Shoemakers in November 2000. The Association accused the Shoemakers of violating provisions of the Deed of Restriction by interfering with the easement over the Jack Creek access road and by operating an outfitting business on their property. The Association sought a permanent injunction ordering the Shoemakers to remove all obstructions from the Jack Creek access road and prohibiting the Shoemakers from operating the outfitting business on their property. At the same time, the Association filed an application for a temporary injunction and a request to set a show cause hearing. The District Court issued an order on November 15, 2000, directing the Shoemakers

3

to appear on December 4, 2000, to show cause why a preliminary injunction should not be granted.

¶9    The Shoemakers filed their answer to the Association's complaint on January 31, 2001.    The Shoemakers' answer asserted general denials of the allegations in the Association's complaint, including a denial that an express easement encumbered their property for the benefit of Association members.  They admitted that "a gate exists on their driveway and that the gate is *sometimes* locked." (Emphasis added.)  The Shoemakers alleged as their first affirmative defense that the Association had waived or abandoned any easement due to the fact that the Association had not used the Jack Creek access road for over seventeen years.  The second and third affirmative defenses asserted that, in light of other available forest service access roads in the subdivision, the easement encumbering their land was unnecessary and moot.  Their final affirmative defense asserted that, if the easement exists, parking vehicles on the section of Jack Creek access road that sits on the Shoemakers' property is outside the scope of the easement.

¶10    The court held the show cause hearing on February 5, 2001.  Larry Wilkins (Wilkins) testified on behalf of the Association.  The Shoemakers did not appear, although their counsel cross-examined the Association's witness and presented arguments.  The court granted a preliminary injunction directing the Shoemakers to keep open the gate across the Jack Creek access road and to remove all "no trespassing" signs during the pendency of the action.

¶11    The court's scheduling order of March 9, 2001, directed the parties to file all pretrial motions, "including motions in limine and motions for summary judgment" on or before July 20, 2001. By stipulation of the parties, the court later extended the deadline for filing motions to October 28, 2001.

¶12    The Association filed a motion for summary judgment. The Association sought summary judgment that it held a valid easement across the Jack Creek access road and that the Shoemakers could not sustain their abandonment defense as a matter of law. The Association attached to its motion the deposition of Daniel Shoemaker, taken August 21, 2001, the deposition of Wilkins, also taken August 21, 2001, and the Shoemakers' Response to Plaintiff's First Set of Interrogatories and Requests for Production of Documents.

¶13    Wilkins testified that he continued to use the road after the Shoemakers lived there. Wilkins explained that he would get around the Shoemakers' locked gate by walking around the section of fence or climbing over the gate. "I used it when they weren't there and I've used it since they lived there, along with other people." He stated that "[t]here's been periods of time when the gate has stood wide open for days, weeks at a time, but it's always locked during hunting season." He stated that he used to drive up the road when the forest service land was open to vehicles, but that when the forest service became closed to vehicles, he would bike, ski, or ride his horse up to the forest service land, using the Jack Creek access road through the Shoemakers' property to get there. He stated that, as a member of the Association's Board, he knows that the money from the Association dues goes to the road

grader and that he saw the Jack Creek access road over the Shoemakers' property graded at least once.

¶14 Daniel Shoemaker asserted in his deposition that non-use extinguished the easement. Yet Shoemaker declared that he "caught [Wilkins] twice in the last couple years," riding his bike on the Jack Creek access road, that he gave Mr. Trautman, a lot owner, permission to retrieve an elk that he shot on public land, and that he saw and confronted some children of Dwayne Allen, another lot owner, who were using the road, presumably while lost. He also stated that he gave a key to his cousin, Mike Uffelman, a lot owner, to access the road.

¶15 Shoemaker claimed that he had confronted people six or seven times about using the road since owning the property and admitted that he may have been carrying a gun during those confrontations. When asked if the gate was locked 24 hours a day, Daniel Shoemaker replied "yes," that it was locked 99.9% of the time. He also stated that, since March of 1997, he has worked full time in Arizona and comes back to his Montana property on vacations, maybe four to six weeks out of the year. He admitted to paying Homeowners Association dues that, in part, go to road maintenance and that a road grader had graded the road on his property in the past year.

¶16 The Shoemakers filed their own motion for summary judgment on November 6, 2001. For the first time, the Shoemakers claimed that the eight-year statute of limitations on contract claims barred the Association's action with respect to the outfitting business. Also for the first time, the Shoemakers claimed that they had extinguished any easement across the

6

Jack Creek access road by adversely possessing the easement for the five-year statutory period. The Shoemakers claimed that the Association should be barred from asserting its interest in the easement because it had failed to raise an objection to the Shoemakers' adverse use within five years of discovering the Shoemakers' locked gate.

¶17 The Shoemakers appended the affidavit of Daniel Shoemaker, subscribed and sworn on November 5, 2001 – two-and-one-half months after his deposition – to their motion for summary judgment. Shoemaker alleged that the gate had remained locked since the time of installation in 1984 other than for permitting his family to enter and exit the property. Shoemaker further alleged that no one within the subdivision ever had asked him or his wife for permission to use the roadway: "Any use of the roadway claimed by Mr. Wilkins, or others, has been without permission or consent. To the best of our knowledge, no one other than my family and guests has used the roadway through my property."

¶18 Shoemaker mentioned two exceptions to this exclusion. The first exception involved some deer hunters, non-members of the subdivision, to whom he denied permission to go past his gate. The second exception was a real estate agent to whom he had given permission and a key to unlock the gate to show land beyond Shoemakers' property to clients. Shoemaker also admitted to leaving for Arizona on extended trips throughout the year.

¶19 The Association objected to the Shoemakers' statute of limitations claim on the basis that the Shoemakers had waived the claim by failing to raise it as an affirmative defense. The Association likewise objected to the Shoemakers' adverse possession claim on the

7

grounds that the Shoemakers had never raised the claim in their answer as an affirmative defense, through a counterclaim, or otherwise.

¶20 The District Court held a hearing on February 7, 2002. Daniel Shoemaker testified that he had locked the gate since he bought his property in 1984 until the court granted the temporary injunction requiring that he open it. He claimed that the easement providing Association members access to the neighboring Forest Service property had been eliminated before his purchase. Shoemaker stated that he saw Wilkins one or two times, a man during hunting season who had been lost, and Mr. Daniels's son and companion all using the access road at some point after he purchased the property.

¶21 The court determined that no justiciable controversy existed as the Shoemakers had ceased outfitting operations long ago and had no present plans to reopen it and thus declined to rule on this issue. The court determined that the Shoemakers had waived their statute of limitations defense on the outfitting business by failing to raise it as an affirmative defense in their answer. The court granted the Association's motion for summary judgment, however, regarding the easement along the Jack Creek access road. The court determined that the Jack Creek access road constituted a valid easement encumbering the Shoemakers' property. The court further determined that the Shoemakers had failed to raise a genuine issue of material fact to support their claim of having extinguished through adverse possession the Association's easement over the Jack Creek access road.

¶22 The court first noted that the Shoemakers had failed to raise the defense of adverse

8

possession in their responsive pleading or in any of their discovery answers. The court then noted that the party seeking to establish an easement by prescription has the burden to *prove* each element of prescriptive right by clear and convincing evidence, citing *Tanner v. Dream Island, Inc.*, 275 Mont. 414, 424, 913 P.2d 641, 648 (1996) (emphasis added). The court stated,

> [t]he Shoemakers have failed to *plead* each of the elements of adverse possession, and their attempt to *prove* those elements consists solely of this statement in their Motion for Summary Judgment: "[t]he locked gate at the entryway to [the Shoemakers'] property was 'open, notorious, exclusive, adverse, continuous and uninterrupted' since its construction and installation in the summer of 1985."

(Emphasis added.)

¶23 The court focused on the "exclusive" and "uninterrupted" elements of adverse possession because the evidence presented on summary judgment demonstrated that certain property owners had continued to use the easement across the Shoemakers' property. The court identified the contested issue between the parties as *frequency* of use rather than the *fact* of such use. The court cited the testimony of Wilkins at the preliminary injunction hearing regarding his continued use of the easement. The court also relied upon Wilkins's uncontroverted testimony that the Association had maintained the development's roads over the years. Daniel Shoemaker conceded in his deposition that Association members had used the easement, without his permission and that his Association dues had been used on at least one occasion to maintain the Jack Creek access road. The court concluded that no genuine

9

issue of fact existed in support of their extinguishment claim because their adverse use was not exclusive or uninterrupted. The Shoemakers appeal.

## STANDARD OF REVIEW

¶24 We review de novo a district court's decision to grant summary judgment under the standard set forth in M. R. Civ. P. 56(c). *Gliko v. Permann*, 2006 MT 30, ¶ 12, 331 Mont. 112, ¶ 12, 130 P.3d 155, ¶ 12. In evaluating cross motions for summary judgment, this Court must evaluate each party's motion on its own merits. *Hajenga v. Schwein*, 2007 MT 80, ¶ 19, 336 Mont. 507, ¶ 19, 155 P.3d 1241, ¶ 19. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." M. R. Civ. P. 56(c).

¶25 The party moving for summary judgment must establish the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Gliko*, ¶ 12. Once the moving party has met its burden, the party opposing summary judgment must present substantial evidence essential to one or more elements of its case to raise a genuine issue of material fact. *Fielder v. Board of County Commissioners*, 2007 MT 118, ¶ 12, 337 Mont. 256, ¶ 12, 162 P.3d 67, ¶ 12. Summary judgment is inappropriate where, based on the record, reasonable jurors could reach different conclusions as to a particular material fact. *LaTray v. City of Havre*, 2000 MT 119, ¶ 33, 299 Mont. 449, ¶ 33, 999 P.2d 1010, ¶ 33; *Scott v. Henrich*, 1998 MT 118 , ¶ 22, 288 Mont. 489, ¶ 22, 958 P.2d 709, ¶ 22.

## DISCUSSION

*Whether the District Court properly determined that the Shoemakers waived the affirmative defense of statute of limitations.*

¶26 The Shoemakers do not dispute the underlying facts concerning the statute of limitations issue. They argue that the District Court incorrectly determined that they had waived the statute of limitations defense under M. R. Civ. P. 8(c) by failing to plead it as an affirmative defense in an answer to the Association's complaint.

¶27 The Shoemakers urge this Court to adopt a more liberal reading of M. R. Civ. P. 8(c), based on the application of Fed. R. Civ. P. 8(c), in *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (allowing a defendant to raise a statute of limitations defense for the first time on motion for summary judgment when the plaintiff failed to demonstrate prejudice). The Shoemakers argue that the Association suffered no prejudice by the untimely assertion of the affirmative defense and, thus, the defense should have been allowed under federal standards.

¶28 The Montana Rules of Civil Procedure govern all civil suits in Montana district courts. We apply the Montana Rules of Civil Procedure as written. M. R. Civ. P. 1; *Busch v. Atkinson*, 278 Mont. 478, 483, 925 P.2d 874, 877 (1996). The plain language of M. R. Civ. P. 8(c) requires a party affirmatively to set forth the statute of limitations defense by answer. M. R. Civ. P. 8(c)'s requirement that an affirmative defense be pled by answer serves the same principles of fairness and notice that require a plaintiff to set forth the basis of a claim in a complaint. *Brown v. Ehlert*, 255 Mont. 140, 146, 841 P.2d 510, 514 (1992). The

11

affirmative pleading avoids surprise and eliminates the sweeping ambiguities of a general denial. *Rambur v. Diehl Lumber Company*, 144 Mont. 84, 89, 394 P.2d 745, 748 (1964).

¶29 Nothing in M. R. Civ. P. 8(c) suggests that an affirmative defense may be raised later in the proceedings upon the showing of a lack of prejudice to the opposing party. This Court consistently has ruled against the circumvention of M. R. Civ. P 8(c)'s requirement that an affirmative defense be pled by answer. We long have held that a party waives an affirmative defense if not raised by answer. *Brown*, 255 Mont. at 146, 841 P.2d at 514; *Chandler v. Madsen*, 197 Mont. 234, 241, 642 P.2d 1028, 1032 (1982); *Estabrook v. Baden*, 284 Mont. 419, 422, 943 P.2d 1334, 1336-37 (1997).

¶30 The Shoemakers failed to plead the statute of limitations as affirmative defenses in their answer. The Shoemakers raised the statute of limitations defenses for the first time in an untimely motion for summary judgment that they filed almost a year after their answer to the Association's complaint. The Shoemakers first cited the eight-year statute of limitations for contracts, barring a claim for breach of the Deed of Restriction, and they also cited the five-year statute of limitations for quieting title against an adverse possessor, barring a claim for enforcement of the Jack Creek access road easement by reservation. The Shoemakers made no attempt, however, to amend their answer to include these defenses in the months leading up to their motion for summary judgment.

¶31 The District Court's ruling denying their summary judgment claim prompted the Shoemakers to seek leave of court to amend their answer. The amendment came too late as

12

more than three years had passed between the start of the litigation and the Shoemakers' motion for an amended answer. The Shoemakers' untimely presentation of the statute of limitations defense cuts against M. R. Civ. P. 8(c)'s plain language and its purpose to provide notice of the specific defenses not raised by general denials. *Brown*, 255 Mont. at 146, 841 P.2d at 514. We agree with the District Court that the Shoemakers waived the statute of limitations defenses by failing to assert the defenses by answer. *Brown*, 255 Mont. at 146, 841 P.2d at 514..

*Whether the District Court improperly resolved a genuine issue of material fact in granting the Association's motion for summary judgment.*

¶32 Our analysis begins with the fact that the Association possesses a valid recorded easement along the Jack Creek access road. The Deed of Restriction filed by the Association reserved easements on all existing roads within the subdivision, including the Jack Creek access road, for all property owners to access public lands. Furthermore, the Shoemakers do not challenge the District Court's determination that a valid Deed of Restriction created an easement by reservation.

¶33 The Association provided Wilkins's and Daniel Shoemaker's deposition testimony to establish that the Shoemakers' gate interfered with the Association members' enjoyment of the easement. The Shoemakers' attempts to eliminate use of roadway by locking the gate and intimidating Jack Creek access road users directly violated the Deed of Restriction.

¶34 All subdivision lot owners in *Mason v. Garrison* similarly enjoyed the use of a

13

communal dock through an easement until the servient tenement lot owner began to impede the path to the dock by putting up fencing, building gardens, and letting his dogs scare away other dock users. *Mason*, 2000 MT 78, 299 Mont. 142, 998 P.2d 531. Although we stated that the servient lot owner may not be excluded from reasonable use of his property by the other lot owners, we concluded that the servient lot owner may not put his property to a use that materially interferes with the rights of the dominant estates. *Mason*, ¶ 49.

¶35 Similarly, the Shoemakers' placement of a gate over the roadway may have been reasonable for purposes of excluding neighboring horses and livestock from their property. Their decision to lock the gate, to approach Association members while wearing a sidearm, and to call the Sheriff when Association members used the easement, however, materially interfered with the Association members' enjoyment of their easement. This material interference violated the Deed of Restriction. Therefore, the Association met its burden on summary judgment by demonstrating no genuine issue of material fact as to (1) creation of the easement, and (2) the Shoemakers' interference with the easement.

¶36 The Shoemakers' defense presents a twist on the usual easement analysis as they seek to *extinguish* through adverse possession a recorded easement – the Jack Creek access road – rather than *establish* an easement through adverse possession. The owner of the servient tenement extinguishes an easement through adverse use in the same manner as acquisition of title by adverse possession and acquisition of an easement by prescription: open, notorious, exclusive, adverse, continuous and uninterrupted use for the five-year

14

statutory period. *Pearson v. Virginia City Ranches Ass'n*, 2000 MT 12, ¶ 46, 298 Mont. 52, ¶ 46, 993 P.2d 688, ¶ 46.

¶37    The District Court applied the incorrect standard of proof. At trial, the party asserting a claim for adverse possession must prove each element by clear and convincing evidence. *Wareing v. Schreckendgust*, 280 Mont. 196, 206, 930 P.2d 37, 43 (1996). Upon a motion for summary judgment, the moving party, if asserting easement by prescription or adverse possession, must establish by clear and convincing evidence the elements of prescription in order to be entitled to judgment as a matter of law. *See Hitshew v. Butte/Silver Bow County*, 1999 MT 26, ¶¶ 16-20, 293 Mont. 212, ¶¶ 16-20, 974 P.2d 650, ¶¶ 16-20; *Unruh v. Tash*, 271 Mont. 246, 254, 896 P.2d 433, 438 (1995).

¶38    The non-moving party, however, need only submit evidence of sufficient facts to support a genuine issue of material fact to preclude summary judgment in favor of the movant. M. R. Civ. P. 56. The non-movant must present evidence of some probative force, rather than merely rely on the defense pled. *Conboy v. State*, 214 Mont. 492, 500, 693 P.2d 547, 551 (1985). The Shoemakers defended by alleging that they had extinguished the Association's easement through adverse possession. As the non-movant, the Shoemakers must present facts supporting, rather than negating, the elements of adverse possession.

¶39    The Shoemakers do not contest the District Court's determination on summary judgment that the Association had established the existence of a valid recorded easement and that the easement encumbered their land. They assert that the District Court improperly

granted summary judgment in favor of the Association because a genuine issue of material fact exists as to their adverse possession defense. This assertion falls short because the Shoemakers failed to present sufficient evidence to support each element of their extinguishment by adverse possession claim. In fact, they presented evidence that negated their claim.

¶40 Like the District Court, we focus our analysis here on the "continuous" and "uninterrupted" elements. Continuous and uninterrupted denotes use that has not been interrupted by an act of the owner of the land or by the voluntary abandonment by the party claiming the right. *Brimstone Min., Inc. v Glaus*, 2003 MT 236, ¶ 23, 317 Mont. 236, ¶ 23, 77 P.3d 175, ¶ 23. In *Brimstone*, we held that acts of adverse possession had not extinguished an already existing easement when the servient estate owner put up a locked gate and granted permission to a few users because "permissive use after a hostile act is sufficiently inconsistent to extinguish an easement." *Brimstone*, ¶¶ 36, 41. "Continuous use" does not mean constant use; rather, if the claimant used the property in dispute whenever he desired, without interference by the owner of the servient estate, the use was continuous and uninterrupted. *Cook v. Hartman*, 2003 MT 251, ¶ 29, 317 Mont. 343, ¶ 29, 77 P.3d 231, ¶ 29, quoting *Confederated Salish & Kootenai Tribes v. Vulles*, 437 F.2d 177, 180 (9th Cir. 1971).

¶41 The record is replete with admissions from Daniel Shoemaker that Association members used the easement and with testimony from Wilkins that he and others continued to

16

use the Jack Creek access road during the years that the Shoemakers claimed to have blocked access. This use by Association members interrupts the Shoemakers' attempted adverse possession of the easement.

¶42 The Shoemakers admitted in their answer that their gate was only "sometimes" locked. Wilkins testified in a deposition that the Shoemakers' gate had been "left wide open for days, weeks at a time" and that he and at least ten other Association members continued to use the Jack Creek access road. The Shoemakers conceded that they left Montana for a good part of the year and, therefore, would not have known if the easement was used while they were out of state. Wilkins further testified that the Association regularly maintained and graded the road using money collected from Association dues. The Shoemakers even conceded that the Association had graded the road. The Shoemakers' inconsistently locked gate, the uncertainty in their ability to enforce their claim of right while out of state, and the Association's payment for road grading constitute sufficient inconsistency by the Shoemakers, the party asserting the adverse possession right, similar to that present in *Brimstone*.

¶43 Like *Brimstone*, the Shoemakers put up a gate, sometimes locked it, and granted permission to a few users: a real estate agent, an elk hunter, and their cousin. We similarly conclude here that the Shoemakers' inconsistent actions failed to extinguish an easement. Our review of the record reveals, however, sufficient evidence to determine that the District Court reached the right result that the Shoemakers failed to establish a prima facie case for

17

uninterrupted possession in granting summary judgment to the Association even if it employed the wrong standard. *State v. Rensvold*, 2006 MT 146, ¶ 34, 332 Mont. 392, ¶ 34, 139 P.3d 154, ¶ 34.

¶44 The Shoemakers contend that they adequately challenged Wilkins's testimony through Daniel Shoemaker's deposition and other affidavits to the point of raising a genuine issue of material fact. The record highlights, however, the Shoemakers' ever-evolving defense. The Shoemakers claimed in their answer to have locked the gate "sometimes." The Shoemakers' answer asserted abandonment and waiver as their affirmative defense. These claims contradict Daniel Shoemaker's deposition testimony, affidavit declarations, and hearing testimony. In his deposition, Shoemaker asserted non-use as his affirmative defense. In his affidavit, he asserted adverse possession as his affirmative defense and, in his hearing testimony, he continued to assert adverse possession through his locking of the gate.

¶45 A party may not avoid summary judgment by creating factual inconsistencies in the record. "It is the general rule that allegations, statements, or admissions contained in a pleading are conclusive as against the pleader, and are admissible as against the party making them in the litigation as proof of the facts which they admit." *Anderson v. Mace*, 99 Mont. 421, 427-28, 45 P.2d 771, 73-74 (1935). We take the admissions made in the Shoemakers' answer as proof.

¶46 Similarly, "[w]hen statements in an affidavit submitted pursuant to Rule 56(e), M.R.Civ.P., are repudiated in a later deposition, the affidavit statements do not raise a

18

genuine issue of material fact." *Herron v. Columbus Hosp.*, 284 Mont. 190, 195, 943 P.2d 1272, 1275 (1997). District courts may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. *Stott v. Fox*, 246 Mont. 301, 309, 805 P.2d 1305, 1310 (1990); *Kaseta v. N. Western Agency of Gr. Falls*, 252 Mont. 135, 140, 827 P.2d 804, 807 (1992). Therefore, we must consider the unexplained inconsistencies between the answer, deposition testimony, affidavit and hearing testimony of Daniel Shoemaker.

¶47 The Shoemakers contradicted themselves throughout the litigation when asked how many Association members they had seen using the easement across their property. The Shoemakers' answer declared that *no one* had used the easement in the 17 years they had owned the property. Daniel Shoemaker admitted in his deposition that he saw Wilkins using it two times and that he could not say whether Wilkins otherwise had used the easement. Shoemaker estimated a *total of seven* users in 17 years. His affidavit named *only two* exceptions to the assertion that no one used the easement in 17 years: a deer hunter who was denied permission and the real estate agent who was granted permission. Finally, in his testimony at the summary judgment hearing, he claimed that he saw Wilkins use the easement *twice*, that he caught a lost hunter on the easement once, and that he had seen Dwayne Allen's son using it once. We consider these contradictions in light of Wilkins's consistent statements at the show cause hearing and during his deposition.

¶48 Daniel Shoemaker's statements regarding how often the gate was locked further

19

evidence the Shoemakers' evolving defense. For example, the Shoemakers' answer included the admission that the gate was "sometimes" locked – a position consistent with Wilkins's testimony. Daniel Shoemaker's deposition, affidavit and hearing testimony declared, however, that the gate had been locked always, except for his family entering and leaving.

¶49 The parties do not provide conflicting accounts. We instead have one party making admissions in its answer that conflict with statements provided in a deposition that, in turn, conflict with statements in an affidavit and testimony during a hearing. This scenario does not create a genuine issue of material fact between the parties; it highlights the evolving nature of the Shoemakers' defense. The Shoemakers' shifting accounts fail to refute the Association's evidence to the point of creating a genuine issue of material fact regarding their adverse possession claim that could be resolved only at trial. These contradictory declarations would leave a jury no reasonable basis on which to find adverse possession. *LaTray*, ¶ 33; *Scott*, ¶ 22. The Shoemakers presented no credible evidence with respect to the continuous and uninterrupted elements of adverse possession that could allow a jury to determine that the Shoemakers had extinguished the Jack Creek access road easement by adverse possession. *LaTray*, ¶ 33; *Scott*, ¶ 22.

¶50 Once the prima facie case of adverse possession has been made, the presumption shifts in favor of the adverse user's title and the burden shifts to the other party to show that such use was permissive rather than adverse. *Warnack v. Coneen Family Trust*, 266 Mont. 203, 216, 879 P.2d 715, 723 (1994). The presumption of adverse use never sprang into

20

existence here, however, because the Shoemakers failed to establish a prima facie case in support of all of the elements. *Warnack*, 266 Mont. at 216-17, 879 P.2d at 724. We agree with the District Court that the fact of some use, regardless of frequency, defeats the continuous and uninterrupted elements of the Shoemakers' defense of extinguishment by adverse possession. This deficiency entitles the Association to judgment as a matter of law. *Osterman v. Sears, Roebuck & Co.*, 2003 MT 327, ¶ 34, 318 Mont. 342, ¶ 34, 80 P.3d 435, ¶ 34.

¶51     We affirm the District Court's order.

_____
                                                     Justice

We Concur:

_____
                    Chief Justice

_____

_____

_____
                          Justices

21