DA 15-0543

FILED

April 26 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0543

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 95

JERRY T. RAY,

       Plaintiff and Appellant,

  v.

MARTIN R. CONNELL,

       Defendant and Appellee.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV-14-0765
Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jack R. Stone, Attorney at Law, Lewistown, Montana

      For Appellee:

          Brian L. Taylor, Jaclyn S. Laferriere, Hall & Evans, LLC,
Billings, Montana

Submitted on Briefs:  March 9, 2016

Decided:  April 26, 2016

Filed:

                                      Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Jerry Ray (Ray) appeals from an order and memorandum entered by the Thirteenth Judicial District Court, Yellowstone County, granting Martin Connell's (Connell) two motions for partial summary judgment and renewed motion for summary judgment. We affirm.

¶2 Ray presents the following dispositive issues for review:

1. *Did the District Court err in granting Connell summary judgment on Ray's defamation claim based on a conversation between Connell and Jim Ronquillo (Ronquillo)?*

2. *Did the District Court err in granting Connell summary judgment on Ray's defamation claim based on comments Connell made at two Billings City Council meetings?*

3. *Did the District Court err in granting Connell summary judgment on Ray's claims of tortious interference with business interests and general damages for mental anguish and suffering based on Connell's alleged defamation of Ray's character?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 Ray and Connell are both real estate agents. Ray and Connell each own land in the East Billings Urban Revitalization District (EBURD). EBURD is a zoning district in the industrial area of Billings, which has adopted a master plan and code (EBURD Code) to regulate development and renewal in the area. Property owners within EBURD also make up a non-profit organization called the Billings Industrial Revitalization District (BIRD). BIRD advocates for development within EBURD. Connell is president of BIRD. In May 2013, Ray requested two variances from the EBURD Code in order to develop property he owns located within the district. The Board of Adjustments denied

one variance request and granted the other. BIRD and several landowners appealed the granted variance. Ray appealed the denied variance. The EBURD Code and the outcome of Ray's two variance requests generated contention between Ray and Connell. Connell is a proponent of the EBURD Code and Ray is a vocal opponent.

¶4 Ray wrote a letter to the Billings City Council asking the Council to rescind or modify the EBURD Code. The Billings City Council held a meeting on October 7, 2013, and discussed the EBURD Code. According to that meeting's transcript, Connell addressed the Council and commented on Ray's petition to rescind or modify the EBURD Code. Connell said, "I sent [the City Council] a letter last week kind of outlining the Jerry T. Ray situation." Connell continued, "[T]he simplest way to summarize Jerry T. Ray is he's like a broken watch. He's right twice a day, and he in-fills a lot of stuff. So there's a lot of things that you've been told that are not factual."

¶5 At another Billings City Council meeting, held on January 6, 2014, the minutes reflect that Ray addressed the Council and said he wanted to talk about the first two phases of EBURD in which he owned property. He advocated for rezoning the EBURD back to "Controlled Industrial" because the EBURD Code is too stringent, complying with it is too expensive, and its provisions discourage development. The minutes show that Connell later spoke and called himself "public enemy #1 [to Ray's] petition." Connell accused Ray of making misrepresentations and invited Ray to follow city procedures and buy the required permits. Connell said Ray's criticisms of the EBURD Code were "just simply not true." The minutes show Connell said "if they held a hearing with sworn testimony, it would be found that what Mr. Ray had told Council was not

true." Finally, the minutes indicate Connell accused Ray of having ex-parte communication with all of the Board of Adjustments members prior to their ruling on his variance requests and giving them factually incorrect information to influence their decision. Connell admitted he was not at the Board of Adjustments meeting when Ray's requests were considered because Ray "had turned his name into the Board of Realty for malpractice." As a result, Connell "had to go before the Board of Realty, who dismissed the complaint with prejudice." Connell concluded, "The bottom line was there were seven criteria to grant a variance, and Mr. Ray only qualified for one—a parking lot; but the board granted it."

¶6 Ray filed suit against Connell alleging Connell's comments during these two meetings constituted defamation of his character. Additionally, Ray accused Connell of telling Ronquillo, a Billings City Councilman, that Ray had stolen gates from Connell's business, Pierce Packing, and was keeping them at his residence. This accusation, Ray argued, also constituted defamation and Ray accused Ronquillo of spreading the rumor. On April 24, 2014, Ronquillo signed an affidavit in which he attested Connell told him that Ray stole gates from Connell's business and had them at his home. In the affidavit, Ronquillo attested Connell's statement about Ray stealing gates was "defamation of Jerry T. Ray's character" and "this untrue statement could cause Jerry T. Ray financial harm as Jerry is a Realtor and the truth is paramount in the real estate profession." Later, during a deposition taken on March 12, 2015, Ronquillo testified that he did not read the affidavit fully before signing it, saying, "I probably didn't read the whole doggone thing, which is my fault," and did not recognize the document until his signature was pointed out.

4

During his deposition, Ronquillo contradicted many of the statements in his affidavit. He testified he believed that Connell's statement about Ray stealing gates was a joke, not defamation. Ronquillo testified that he conveyed Connell's story only to Ray and that he did not believe the accusation could cause Ray financial harm because he had not told anyone else.

¶7 Ray claimed punitive damages, general damages based on a lost real estate commission, costs, attorney fees and expenses for defamation. Ray claimed that he lost a real estate commission because Donald Janich, a ranch-owner, heard Connell's comments while watching a Billings City Council meeting on television and, afterwards, decided not to allow Ray to list his ranch. Donald Janich's ranch later sold, which, according to Ray's third amended complaint, resulted in damages totaling "$82,500.00 in lost commission from a real estate transaction less any costs of split commission with Donald R. Janich." Ray included an additional claim in his second amended complaint: Ray claimed that Connell's same allegedly-defamatory conduct entitled him to an unidentified amount of damages for tortious interference with business interests. Ray included an additional claim in his third amended complaint for $400,000 in general damages for mental anguish and suffering.

¶8 On August 10, 2015, after considering the briefs, pleadings, and papers on file and arguments of counsel, the District Court granted Connell's two motions for partial summary judgment and renewed motion for summary judgment. The District Court held that: 1) the absolute privilege of § 27-1-804(2), MCA, applied to the statements Connell made at the Billings City Council meetings and protected them from constituting

defamation; 2) Connell's statement to Ronquillo was not defamation because, according to Ronquillo's deposition, which is controlling, it was a joke; and 3) Connell was entitled to summary judgment on Ray's claims of tortious interference and mental anguish damages because the underlying conduct for those claims was the same conduct that the Court determined was not defamatory and entitled Connell to summary judgment. Ray appeals.

## STANDARD OF REVIEW

¶9 We review summary judgment orders de novo, performing the same analysis as the district court. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186 (citation omitted). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

## DISCUSSION

¶10 *1. Did the District Court err in granting Connell summary judgment on Ray's defamation claim based on a conversation between Connell and Ronquillo?*

¶11 Ray claims Connell defamed him by communicating an accusation of theft to Ronquillo. Defamation is effected by libel or slander. Section 27-1-801, MCA. "Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation." Section 27-1-802, MCA. "Slander is a false and unprivileged publication

6

other than libel that: 1) charges any person with crime . . ." or "3) tends directly to injure a person in respect to the person's . . . business, either by imputing to the person general disqualification in those respects that the office or other occupation peculiarly requires or by imputing something with reference to the person's office, profession, trade, or business that has a natural tendency to lessen its profit . . . ." Section 27-1-803, MCA. For defamatory words to be actionable, they "must be of such nature that the court can presume as a matter of law that they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided. It is not sufficient, standing alone, that the language is unpleasant and annoys or irks him, and subjects him to jests or banter, so as to affect his feelings." *McConkey v. Flathead Elec. Coop.*, 2005 MT 334, ¶ 45, 330 Mont. 48, 125 P.3d 1121 (citing *Wainman v. Bowler*, 176 Mont. 91, 96, 576 P.2d 268, 271 (1978)).

¶12 Here, Connell's statement to Ronquillo accused Ray of a crime of stealing gates. Ronquillo's affidavit attested Connell's statement was defamatory. However, Ronquillo contradicted his affidavit statements during his deposition and said he thought Connell's accusation that Ray stole gates was a joke. A joke is not defamatory and, therefore, not actionable. Although it may have been unpleasant, annoying, or irksome, the joke about Ray stealing gates did not disgrace or degrade Ray or cause him to be shunned or avoided and is not sufficient.

¶13 Ray argues that the discrepancy between Ronquillo's affidavit and deposition testimony raised a genuine issue of material fact—whether Connell's accusation was a joke or sincere—which precluded the District Court from granting summary judgment.

7

However, "[w]hen statements in an affidavit submitted pursuant to Rule 56(e), M.R.Civ.P., are repudiated in a later deposition, the affidavit statements do not raise a genuine issue of material fact." *Meadow Lake Estates Homeowners Ass'n v. Shoemaker*, 2008 MT 41, ¶ 46, 341 Mont. 345, 178 P.3d 81 (quoting *Herron v. Columbus Hosp.*, 284 Mont. 190, 195, 943 P.2d 1272, 1275 (1997) (In *Herron*, Herron sued Columbus Hospital after being injured by an automatic door entering a building Columbus Hospital owned. To oppose Columbus Hospital's motion for summary judgment, Herron submitted an affidavit of Lyle Skinner, a Columbus Hospital maintenance employee. Lyle Skinner was later deposed and contradicted several of the statements he attested to in his affidavit. In *Meadow Lake Estates*, we applied the same principle outlined in *Herron*—a witness's later deposition controls where it, at least in part, repudiates statements made in the witness's earlier affidavit—to a party to the litigation where the party's later deposition contradicted an earlier attested affidavit.).

¶14 Ronquillo signed his affidavit on April 24, 2014, and repudiated those statements in a deposition taken on March 12, 2015. Ronquillo's later deposition testimony—that he believed Connell was joking when he told Ronquillo that Ray stole gates—controls. Ronquillo's deposition testimony clearly contradicts his earlier affidavit, which he admitted he signed without thoroughly reviewing and did not initially recognize; thus the contradictory statements do not raise a genuine issue of material fact. Connell was entitled to judgment as a matter of law.

8

¶15 *2. Did the District Court err in granting Connell summary judgment on Ray's defamation claim based on comments Connell made at two Billings City Council meetings?*

¶16 A privileged publication is one made in any "official proceeding authorized by law." Section 27-1-804(2), MCA. The City of Billings Charter creates "a City council of the City of Billings composed of ten (10) Councilmembers." Section 3.02. The Billings Municipal Code provides that "[t]he city council shall hold a regular meeting for the transaction of city business on the second and fourth Mondays in each month" and that "[t]he mayor or any three (3) councilmembers may request" a special meeting. Section 2-211. A "regular meeting of the Great Falls city commission" constitutes an official proceeding authorized by law. *Skinner v. Pistoria*, 194 Mont. 257, 264, 633 P.2d 672, 676 (1981). Here, applying the City of Billings Charter, its Municipal Code, and *Skinner* the District Court held "a meeting or special meeting of the Billings City Council is also such an official proceeding." The District Court was correct in concluding that Billings City Council meetings, both regularly scheduled and specially called, constitute official proceedings authorized by law as contemplated in § 27-1-804(2), MCA, and communications during those meetings are privileged.

¶17 "One requisite of a defamation action is that the communication must be unprivileged. A privileged communication is one which, except for the circumstances under which it is made, may be defamatory and actionable." *Skinner*, 194 Mont. at 261, 633 P.2d at 675 (citation omitted). The privilege created by § 27-1-804(2), MCA, is an absolute privilege against liability for defamation and is therefore unaffected by the presence of malice. *Skinner*, 194 Mont. at 263, 633 P.2d at 675-76 (citations omitted).

9

The privilege covers critical expressions made at official meetings authorized by law that are responsible for the interest being expressed. *Skinner*, 194 Mont. at 263, 633 P.2d at 676.

¶18 Ray claims Connell defamed him during two Billings City Council meetings by maliciously accusing Ray of not telling the truth. This, he argues, slandered him and negatively impacted Ray's business as a real estate agent. The meeting on October 7, 2013, was a Billings City Council Work Session and the meeting on January 6, 2014, was a Billings City Council Special Meeting. We agree with the District Court's conclusion that both meetings constituted official proceedings authorized by law. The Billings City Council is responsible for transacting city business and the City of Billings adopted the EBURD Code, which was a topic at both meetings. We agree with the District Court's conclusion that the Billings City Council is responsible for interests related to the EBURD Code.

¶19 At both meetings, Connell accused Ray of criticizing the EBURD Code provisions he disliked by conveying information to the Council that was "not factual," "not true," or "simply not true." He accused Ray of having inappropriate, ex-parte communications with the Board of Adjustments members and having "turned him in" to the Board of Realty for malpractice. Connell also referred to himself as public enemy number one to Ray's petition. These comments constitute critical expressions about Ray and his petition to rescind or modify the EBURD code and may have been arguably defamatory and actionable. However, because they were communicated to the body responsible for the interest being expressed at an official proceeding authorized by law, they were absolutely

10

privileged under § 27-1-804(2), MCA. Whether the comments were malicious is irrelevant because the privilege covers both malicious critical expressions and non-malicious critical expressions. Additionally, Ray seems to contend that Connell's status, as either a public figure or private figure, has bearing on his claim. However, we conclude that the absolute privilege of § 27-1-804(2), MCA, draws no distinction based upon the speaker's status, and, therefore, Connell's status is irrelevant. The District Court properly granted Connell summary judgment on Ray's defamation claim based on Connell's comments made at two Billings City Council meetings because the comments were absolutely privileged under § 27-1-804(2), MCA. Connell was entitled to judgment as a matter of law.

¶20     *3. Did the District Court err in granting Connell summary judgment on Ray's claims of tortious interference with business interests and general damages for mental anguish and suffering based on Connell's alleged defamation of Ray's character?*

¶21     Ray argues Connell's statements to Ronquillo and comments at the Billings City Council meetings hurt his business as a real estate agent and will continue to do so. Ray argues Connell's statements also impacted his reputation, life, and livelihood, causing him mental anguish and suffering. Ray inserted these additional claims in his second and third amended complaints. As support for these additional claims, Ray incorporated by reference all earlier paragraphs of the complaints. The District Court concluded Connell was entitled to summary judgment on these additional claims because it had already granted summary judgment on Ray's defamation claims and the additional claims failed to allege "any additional conduct of Connell upon which to impose liability under

11

Montana law." We conclude, likewise, that Ray's additional claims rely on the same underlying conduct that we have already concluded is not actionable. Therefore, no genuine issue of material fact existed and the District Court properly concluded Connell was entitled to judgment as a matter of law.

## CONCLUSION

¶22 The District Court's order granting Connell's two motions for partial summary judgment and renewed motion for summary judgment is affirmed.


/S/ LAURIE McKINNON


We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER