No. DA 06-0285

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 118

_____

JENNIFER FIELDER, PAUL FIELDER, ROBERT
MANN, BETHANNE MANN, SCOTT WIESTLING,
JEANNE WIESTLING, JAMES GORDON, DARLENE
GORDON, LOREN McCLOUD, LORIS McCLOUD,
HONANI POLEQUAPTEWA and JEAN POLEQUAPTEWA,

        Plaintiffs and Appellants,

   v.

BOARD OF COUNTY COMMISSIONERS,
Sanders County, Montana, and DONALD OLIVER,

        Defendants and Respondents.

_____

APPEAL FROM:    District Court of the Twentieth Judicial District,
                    In and for the County of Sanders, Cause No. DV-04-44,
                    The Honorable D. Kim Christopher, Presiding Judge.

COUNSEL OF RECORD:

        For Appellants:

                Darrel L. Moss, Sullivan, Tabaracci & Rhoades, Missoula, Montana

        For Respondent Oliver:

                Donald V. Snavely, Snavely Law Firm, Missoula, Montana

        For Respondent County:

                William T. Wagner, Garlington, Lohn & Robinson, Missoula, Montana

_____

                                Submitted on Briefs:  January 24, 2007
                                             Decided:  May 22, 2007

Filed:

_____
                                  Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Appellants Jennifer Fielder, Paul Fielder, and other residents of Sanders County (collectively Fielders), filed a complaint challenging the Sanders County Commissioners' (Commissioners) approval of the preliminary plat of the Waterfront West Major Subdivision (Waterfront West). The District Court for the Twentieth Judicial District, Sanders County, granted summary judgment in favor of the County and the developer, Donald Oliver (Oliver). Fielders appeal and we reverse in part and affirm in part.

¶2 We address the following issues:

¶3 Did the District Court correctly determine that Fielders' appeal of the Commissioners' decision had not been timely filed?

¶4 Did the District Court correctly determine that the Commissioners did not act arbitrarily and capriciously by accepting a cash-in-lieu donation?

¶5 Did the District Court correctly determine that legal access existed to the parcels in Waterfront West?

¶6 Did the District Court correctly determine that the Department of Environmental Quality (DEQ) review of water and sanitation issues could be completed after preliminary plat approval, but before final plat approval?

FACTS AND PROCEDURAL HISTORY

¶7 Oliver Trust owned and developed in phases four contiguous subdivisions known as Waterfront Estates, Riverside Estates, Coveview Estates and Waterfront West. Oliver envisioned the development of the adjoining parcels under a common development plan. Oliver first developed Waterfront Estates. Oliver platted the access roads for all four of

2

the subdivisions to lie on the outer boundaries of the subdivisions with the easements lying one-half on each adjoining subdivision. Waterfront Circle creates the southern boarder for Waterfront West and intersects with Coveview Lane to create the eastern boarder for Waterfront West. Oliver designed Waterfront Circle and Coveview Lane to be used by the adjoining subdivisions as his developments progressed. Fielders own properties adjacent to Waterfront West in Coveview Estates.

¶8     Oliver's attorney prepared a document titled "Second Amended Declaration of Conditions, Covenants and Restrictions for Waterfront Estates Subdivisions, Etc.," (Declaration), in September 2001, to clarify the road dedications. The Declaration provided:

> The roads serving Waterfront and Coveview are hereby forever dedicated to the use and enjoyment of the owners of all the lots within Waterfront, Coveview, Parcels 4 and 5 of Riverside, and I.P. The Declarant shall retain the right of use and enjoyment for as long as he lives.

¶9     The County had approved only the Waterfront Estates subdivision at the time that Oliver executed the Declaration. Coveview Estates was still in the planning stage and Waterfront West, called the Irregular Parcel or "I.P." at this time, had not been platted. Oliver sought to subdivide the Irregular Parcel under the name Waterfront West. The County held a public hearing for Oliver's request for approval of the preliminary plat for Waterfront West on March 9, 2004. The Commissioners granted conditional preliminary plat approval on March 30, 2004. The preliminary plat approval for Waterfront West included conditions that Oliver make a cash-in-lieu donation to satisfy the park requirement and that Oliver comply with all local and state subdivision requirements,

3

including DEQ review of water and sanitation issues.

¶10 Fielders appealed the preliminary plat approval of Waterfront West to the District Court on the grounds that the Commissioners failed to require DEQ review and approval of the water and sanitation issues before granting preliminary plat approval, that Waterfront West lacked proper access, and that the cash-in-lieu donation was arbitrary. Fielders' attorney delivered the complaint, summonses, filing fee, and a letter to the Clerk of District Court requesting her to file the complaint, to UPS in Missoula on April 28, 2004, for overnight delivery. The UPS tracking information showed that it had delivered the package containing the complaint on April 29, 2004. The complaint was stamped "filed" on May 3, 2004, however, four days after the 30-day period for appeal had expired.

¶11 Oliver moved for summary judgment on the grounds that Fielders filed the appeal more than thirty days after the Commissioners' decision to grant Waterfront West preliminary plat approval. Oliver also argued that the Commissioners were not required to review the sanitation and water issues before approval of the preliminary plat, legal access to the new subdivision existed, and the cash-in-lieu of parks payment was appropriate. The District Court determined that Fielders had filed the appeal late, but, nevertheless, addressed the merits. The District Court granted Oliver's motion for summary judgment. We reverse in part and affirm in part.

STANDARD OF REVIEW

¶12 We review *de novo* a district court's grant of summary judgment using the standard established by M. R. Civ. P. 56. The moving party must establish the absence of

4

a genuine issue of material fact and entitlement to judgment as a matter of law. *Gliko v. Permann*, 2006 MT 30, ¶ 12, 331 Mont. 112, ¶ 12, 130 P.3d 155, ¶ 12. Once a moving party has met its burden, the opposing party must present substantial evidence essential to one or more elements of its case in order to raise a genuine issue of material fact. *Gliko*, ¶ 12. We review a district court's conclusions of law to determine whether they are correct. *Gliko*, ¶ 13.

## ISSUE ONE

¶13 *Did the District Court correctly determine that Fielders' appeal of the Commissioners' decision had not been timely filed?*

¶14 Fielders argue that the District Court incorrectly determined that their complaint had not been timely filed. The Commissioners issued written findings for the conditional preliminary plat approval for Waterfront West on March 30, 2004. Section 76-3-625(2), MCA, provides that an aggrieved party may appeal to the district court within 30 days a decision of the governing body to approve conditionally a preliminary plat for a proposed subdivision. The thirty days allowed for appeal began to run when the Commissioners signed the written findings on March 30, 2004. Section 76-3-620, MCA; *Madison River R.V. LTD. v. Town of Ennis*, 2000 MT 15, ¶ 21, 298 Mont. 91, ¶ 21, 994 P.2d 1098, ¶ 21. Fielders had until April 29, 2004, to file the Complaint. Oliver does not dispute that the complaint arrived on April 29, 2004, but argues that the date stamped "filed" on the complaint controls.

¶15 M. R. Civ. P. 5(e) provides that "[t]he filing of papers with the court as required by these rules shall be made by filing them with the clerk of court." This Court

5

previously stated that unlike service by mail, which is complete on the date of mailing, filing by mail is not complete until the pleading is placed in the custody of the clerk of court. *Schaffer v. Champion Home Builders Co.*, 229 Mont. 533, 536, 747 P.2d 872, 874 (1987). In *Schaffer*, the plaintiff claimed that he mailed the complaint three days before the statute of limitations period expired. *Schaffer*, 229 Mont. at 536, 747 P.2d at 874. The clerk of district court did not stamp the complaint "filed" until one day after the period expired. This Court upheld summary judgment on the grounds that Schaffer had failed to present any evidence that his complaint was in the clerk's custody before March 1, 1983. *Shaffer*, 229 Mont. at 536, 747 P.2d at 874.

¶16    Here, by contrast, the undisputed evidence showed that UPS delivered Fielders' complaint to the Clerk of District Court on April 29, 2004. Federal courts provide further guidance in interpreting M. R. Civ. P. 5(e), which is identical in relevant part to F. R. Civ. P. 5(e). *Mohl v. Johnson*, 275 Mont. 167, 171, 911 P.2d 217, 220 (1996). Federal courts have stated that, "[p]apers and pleadings including the original complaint are considered filed when they are placed in the possession of the clerk of court." *Cinton v. Union Pacific R. Co.*, 813 F.2d 917, 920 (9th Cir. 1987) (citing C. Wright & A. Miller, *Federal Practice and Procedure* § 1153 (1969)). The Ninth Circuit Court of Appeals further stated the possession of the papers may be actual or constructive for a document to be deemed filed. *Cinton*, 813 F.2d at 920 (citing *United States v. Dae Rim Fishery Co.*, 794 F.2d 1392, 1395 (9th Cir. 1986)). To construe the rule otherwise could lead to jurisdiction turning on such fortuities as whether the deputy clerk left for dinner a half hour early, or dashed off to the hospital because her child became ill. *Sheviakov v. I.N.S.*,

6

237 F.3d 1144, 1148 (9th Cir. 2001).

¶17 In *U. S. v. Nguyen*, 997 F. Supp. 1281, 1287 (C.D. Cal. 1998), the clerk of court received and lodged Nguyen's motion on April 22, 1997, but failed to stamp the motion "filed" until two days after the statute of limitations expired on April 23, 1997. The federal court determined that the "filed" stamp is not conclusive in deciding that Nguyen's motion had been timely filed. The court held instead that a document is deemed filed on the date that the clerk receives the document. *Nguyen*, 997 F. Supp. at 1288. We are persuaded by the federal court's interpretation.

¶18 The undisputed evidence revealed that Fielder's complaint arrived at the Clerk of District Court's office on April 29, 2004, and therefore, was timely filed. The District Court incorrectly concluded that Fielders' complaint was untimely. We now address the merits of the Fielders' appeal.

ISSUE TWO

¶19 *Did the District Court correctly determine that the Commissioners did not act arbitrarily and capriciously by accepting a cash-in-lieu donation?*

¶20 Fielders argue that the District Court incorrectly determined that the Commissioners did not act arbitrarily and capriciously by requesting that Oliver make a cash-in-lieu of land donation to satisfy the parks dedication requirement. Section 76-3-621, MCA, provides the Commissioners with the discretion to accept either a land or cash donation to satisfy the park dedication requirement. Specifically, the Commissioners, "in consultation with the subdivider and the planning board or park board that has jurisdiction, . . . and, giving due weight and consideration to the expressed preference of

7

the subdivider, may determine whether the park dedication must be a land donation, cash donation, or a combination of both." Section 76-3-621(4), MCA.

¶21 The County Park Board proposed that Oliver satisfy the park requirement with a cash-in-lieu payment to the Sanders County Park Fund because the land proposed by Oliver was not suitable for use as parkland. Fielders allege that Oliver made certain inaccurate representations that private park land and open space could be used by residents of the new subdivision. Fielders fail to point to any evidence in the record, however, that supports their contention. The District Court correctly determined that the Commissioners did not act arbitrarily in their decision to request a cash-in-lieu of land donation payment.

ISSUE THREE

¶22 *Did the District Court correctly determine that legal access existed to the parcels in Waterfront West?*

¶23 Fielders argue that allowing lot owners in Waterfront West to use Waterfront Circle and Coveview Lane unilaterally expands the scope of the easements. Fielders contend that the Waterfront West subdivision constituted a single parcel when Oliver drafted the Declaration, and, therefore, the scope of the easement should be limited to the use at the time of the Declaration. Oliver argues that property owners of the adjoining parcels, including Waterfront West, own the property up to the center of the roadway and possess reciprocal easements for use of the roads. Oliver argues that the Declaration's language demonstrates his intent that Waterfront Circle and Coveview Lane would service all current and future subdivisions.

8

¶24 We interpret grants in a manner similar with contracts in general. Section 70-1-513, MCA. The interpretation and construction of a contract presents a question of law. *Van Hook v. Jennings*, 1999 MT 198, ¶ 10, 295 Mont. 409, ¶ 10, 983 P.2d 995, ¶ 10. A contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful. Section 28-3-301, MCA. When the parties reduce a contract to writing, we must ascertain the intention of the parties from the writing alone if possible. Section 28-3-303, MCA. We also determine the extent of the servitude by the terms of the grant or the nature of the enjoyment by which it was acquired. Section 70-17-106, MCA. If the language of the agreement is clear and unambiguous, we must apply the language as written. *Van Hook*, ¶ 11.

¶25 Oliver's Declaration states that "it is the intent and purpose of this document to amend and clarify: (1) the covenants, and (2) the dedications and reservations set forth on the plats of the above-named subdivision and proposed subdivision (hereinafter 'Waterfront' and 'Coveview')." The Declaration provides that the roads serving Waterfront and Coveview are "hereby forever dedicated to the use and enjoyment of the owners of all of the lots within Waterfront, Coveview, Parcels 4 and 5 of Riverside, and I.P." The Declaration's language establishes Oliver's intent that Waterfront Circle and Coveview Lane were to provide lot owners access to the various subdivisions.

¶26 Fielders argue that the language permitting "all of the owners" use of the roads should limit access only to owners of lots that existed at the time that Oliver executed the Declaration. The Declaration provides, however, that "the final plat of Coveview has not

9

been filed." Oliver admits that he had not subdivided the Irregular Parcel into Waterfront West at the time that he executed the Declaration. Oliver also had not filed the final plat that formally created the lots within the Coveview Estates subdivision. Thus, according to Fielders' own interpretation of the Declaration, they would be precluded from using Waterfront Circle and Coveview Lane because their lot did not formally exist at the time that Oliver executed the Declaration. The Declaration's language does not support this result. The District Court correctly concluded that the Commissioners did not act arbitrarily in finding that legal access exists for the Waterfront West subdivision.

ISSUE FOUR

¶27 *Did the District Court correctly determine that the DEQ review of water and sanitation issues could be completed after preliminary plat approval, but before final plat approval?*

¶28 Fielders argue that DEQ must approve the water and sanitation issues before the local government may approve a preliminary plat. Fielders rely on the Attorney General's opinion that provides that review for compliance with local subdivision regulations must take place at the preliminary plat stage. 49 Mont. Op. No. 7 Atty. Gen. (2001). Fielders interpret this opinion to require that DEQ not just review, but approve the subdivision's water and sanitation issues before approving a preliminary plat.

¶29 The Attorney General's opinion addressed the question of when a proposed subdivision must undergo review to show compliance with local subdivision regulations. Section 76-3-608, MCA (2003), provides that preliminary plat review is designed to ensure compliance with local and state subdivision regulations. A governing body may

10

conditionally approve a preliminary plat and enumerate conditions that the developer needs to meet to ensure approval of the final plat. Section 76-3-604, MCA (2003). The Attorney General noted that the local government may not impose any additional conditions as a prerequisite to a final plat approval after it has approved a preliminary plat. Section 76-3-610(2), MCA (2003). The Attorney General concluded that "[r]eview for compliance with water supply and sewage and solid waste disposal regulations at the final plat stage would be rendered meaningless because the governing body could not impose additional conditions for compliance at this stage."

¶30 Neither the Attorney General's opinion, nor the statutes addressing preliminary plat approval, however, require DEQ to review and approve of water and sanitation issues prior to preliminary plat approval. The statutes require only that the developer comply with local subdivision requirements and obtain DEQ approval before the local government may approve a final plat. Section 76-3-611(1)(a), MCA. Dan Miles (Miles), the Director of Land Services for Sanders County, pointed out that DEQ review requires that the subdivider provide "a copy of the plat, certificate of survey, deed, or other document that is consistent with the document that will be, or has been, filed with the county clerk and recorder for the proposed subdivision." Admin. R. M. 17.36.103(1)(m). Miles further noted that DEQ cannot determine appropriate placements for septic and well systems without an established lot layout.

¶31 In accordance with the regulations and normal practice in the course of the preliminary plat review, the Commissioners approved the preliminary plat for the Waterfront West subdivision with several conditions, including DEQ approval of water

11

and sanitation systems. The final plat approval remains contingent on Oliver satisfying the conditions required by the Commissioners, including compliance with DEQ and local regulations regarding sanitation and water issues. Section 76-3-611(1)(a), MCA. The District Court correctly determined that preliminary plat review "stage" did not end with approval of the preliminary plat, but only after Oliver satisfies the mitigating conditions imposed on the preliminary plat approval.

¶32   Although we reverse the District Court's determination that Fielders' appeal had not been timely filed, we affirm the District Court's decision to grant summary judgment to the Commissioners and Oliver.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ PATRICIA COTTER