FILED

May 13 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 08-0143

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 164

DOLLAR PLUS STORES, INC.,

        Plaintiff and Appellee,

    v.

R-MONTANA ASSOCIATES, L.P., and ROSEN
ASSOCIATES MANAGEMENT CORPORATION,

        Defendants and Appellants.


APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DV 06-667
                    Honorable Edward P. McLean, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Brian J. Smith, Gary B. Chumrau and Kathryn S. Mahe, Garlington, Lohn &
                Robinson, Missoula, Montana

        For Appellee:

                Sean S. Frampton, Morrison & Frampton, Whitefish, Montana


                            Submitted on Briefs:  November 19, 2008

                                      Decided:  May 13, 2009


Filed:

                                  Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     R-Montana Associates, L.P., and Rosen Associates Management Corporation (R-Montana) appeal an order of the Fourth Judicial District Court, Missoula County, that granted summary judgment in favor of Dollar Plus Stores, Inc. (Dollar).  We affirm.

¶2     We review the following issues on appeal:

¶3     *Did the District Court correctly determine that the term "bar or tavern" as used in the lease agreement was unambiguous?*

¶4     *Did the District Court correctly determine that Doc Holliday's was a "bar or tavern"?*

¶5     *Did the District Court correctly determine that the doctrine of laches does not bar Dollar's claims?*

¶6     *Did the District Court abuse its discretion when it granted Dollar's summary judgment motion without holding a hearing?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶7     R-Montana owns the Holiday Village Shopping Center (shopping center) in Missoula.  Dollar leases space in the shopping center.  The parties operate under a lease agreement originally executed in 1973 by the parties' respective predecessors in interest.  The lease agreement provides in pertinent part as follows: "No part of the Shopping Center other than the Leased Premises shall be used for . . . [a] bar or tavern . . . without Tenant's prior written consent."

¶8     R-Montana leased a space in the shopping center to Max's Casino and Subs (Max's)

2

from May of 2004 until July of 2006. Max's possessed a Montana alcoholic beverage license that allowed it to serve beer and wine for on-premises consumption. Max's transferred its Montana alcoholic beverage license to Doc Holliday's Card Room and Casino (Doc Holliday's) when its lease expired. Doc Holliday's took over Max's location to operate a casino and live table card room.

¶9 Dollar complained to R-Montana in June of 2006 that Doc Holliday's was a "bar or tavern." Dollar argued that Doc Holliday's operation of a "bar or tavern" in the shopping center would violate the lease agreement. R-Montana ignored Dollar's complaint and completed the transfer of the lease to Doc Holliday's. Dollar filed an action on July 27, 2006, seeking specific performance of the "bar or tavern" provision of the lease.

¶10 The District Court's scheduling order stated that "[i]t shall be the responsibility of the moving party to advise the court either that the motions are submitted on briefs or to request a hearing in accordance with Rule [6] of the Local Rules of the Fourth Judicial District." The parties engaged in discovery. Dollar filed a motion for summary judgment on August 9, 2007, along with a brief in support of the motion. R-Montana filed a response brief on August 24, 2007. R-Montana also filed three affidavits opposing the motion for summary judgment. Dollar filed a reply brief. Neither party requested a hearing.

¶11 R-Montana argued that the phrase "bar or tavern" as used in the lease was ambiguous. R-Montana contended that Doc Holliday's operated primarily as a casino and that any sales of beer and wine were incidental to the casino and live table card business. R-Montana argued that Doc Holliday's therefore was not a "bar or tavern" as those terms were intended

3

by the parties to the 1973 lease agreement. R-Montana further alleged that the equitable application of laches barred Dollar's claims.

¶12 The District Court granted Dollar's motion for summary judgment on October 29, 2007, without holding a hearing. The District Court determined that Doc Holliday's fell under the common and ordinary understanding of "bar or tavern." The District Court determined that R-Montana had failed to provide reasonable or logical definitions, or persuasive legal authority, for the proposition that the common and ordinary understanding of the term "bar or tavern" would not include a gambling establishment. The court noted that the gambling establishment at issue serves beer or wine pursuant to a Montana beer and wine license for on-premises consumption.

¶13 The District Court further determined that R-Montana had failed to support its argument that the common and ordinary understanding of the term "bar or tavern" was ambiguous. The District Court also concluded that R-Montana's reliance on laches failed to raise a material question of fact that would preclude summary judgment. The parties stipulated to entry of a final judgment and to the amount of Dollar's attorney's fees. The parties stipulated to stay the judgment pending this appeal.

## STANDARD OF REVIEW

¶14 We review de novo a district court's decision to grant summary judgment, using the same criteria applied by the district court under M. R. Civ. P. 56. *Prosser v. Kennedy*

4

*Enterprises*, *Inc*., 2008 MT 87, ¶ 10, 342 Mont. 209, ¶ 10, 179 P.3d 1178, ¶ 10. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." M. R. Civ. P. 56(c). We draw all reasonable inferences in favor of the party opposing summary judgment. *Prosser*, ¶ 10. We review conclusions of law for correctness. *Hughes v. Lynch*, 2007 MT 177, ¶ 8, 338 Mont. 214, ¶ 8, 164 P.3d 913, ¶ 8.

¶15 We review a district court's decision to forego a hearing on a summary judgment motion for an abuse of discretion. *SVKV, L.L.C. v. Harding*, 2006 MT 297, ¶ 19, 334 Mont. 395, ¶ 19, 148 P.3d 584, ¶ 19. A court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *SVKV*, ¶ 19.

## DISCUSSION

¶16 *Did the District Court correctly determine that the term "bar or tavern" as used in the lease agreement was unambiguous?*

¶17 The initial determination of whether an ambiguity exists in a contract presents a question of law. *Wurl v. Polson School Dist. No. 23*, 2006 MT 8, ¶ 17, 330 Mont. 282, ¶ 17, 127 P.3d 436, ¶ 17. We deem a contract term ambiguous when the language of the contract, as a whole, reasonably may be subject to at least two different interpretations. *Wurl*, ¶ 17. The mere fact that the parties disagree as to the meaning of a contract provision fails to create an ambiguity. *Wurl*, ¶ 17. We generally interpret the words of a contract in their ordinary

5

and popular sense unless the parties use the words in a technical sense or unless the parties give a special meaning to them by usage. Section 28-3-501, MCA.

¶18    R-Montana argues that the ambiguous nature of the term "bar or tavern" precludes summary judgment. R-Montana contends that the ambiguity creates an issue of fact regarding the intent of the original parties to the contract. The District Court cited to the Webster's Dictionary definition of both "bar" and "tavern." Webster's defines "bar" as "a counter at which food or esp. alcoholic beverages are served." *Merriam-Webster's Collegiate Dictionary* 91 (Frederick C. Mish ed., 10th ed. 1993). Webster's defines "tavern" as "an establishment where alcoholic beverages are sold to be drunk on the premises." *Merriam-Webster's* at 1208.

¶19    The District Court also noted the more detailed definition of "bar" adopted by the Legislature in 2005 as part of the Montana Clean Indoor Air Act, § 50-40-103, MCA. Under § 50-40-103, MCA, a bar means: "an establishment with a [state liquor] license that is devoted to serving alcoholic beverages for consumption . . . on the premises." The statute further provides that a bar is an establishment "in which the serving of food is only incidental to the service of alcoholic beverages or gambling operations, including but not limited to taverns, night clubs, cocktail lounges, and casinos." Section 50-40-103, MCA. The District Court recognized that this definition did not exist in 1973 when the original parties signed the lease. The District Court stated, however, that the definition reflected a common understanding of the historical conception of what constitutes a "bar."

¶20    R-Montana asserts that the District Court's need to resort to three different definitions in determining the common understanding of bar or tavern supports its claim of ambiguity. The District Court used two separate dictionary definitions for "bar" and "tavern." We consistently have used dictionaries when seeking to define the common use and meaning of terms. *See Ravalli County v. Erickson*, 2004 MT 35, ¶ 13, 320 Mont. 31, ¶ 13, 85 P.3d 772, ¶ 13. R-Montana cites no authority for its argument that the District Court incorrectly used the dictionary definitions to determine the common understanding of "bar or tavern."

¶21    R-Montana also argues that the District Court improperly relied upon § 50-40-103, MCA. R-Montana contends that the 2005 statute is inapplicable to the 1973 lease. R-Montana further argues that the definition serves only the limited purposes of the Clean Indoor Air Act and does not cover commercial leases. R-Montana provides on appeal alternative definitions of "bar or tavern."

¶22    R-Montana asserts that "bar or tavern" could mean an establishment with the primary purpose of selling alcohol to be consumed on the premises. R-Montana argues that the term alternatively could refer to establishments that sell alcoholic beverages pursuant to a state liquor license for consumption on the premises. R-Montana proposes that another alternative definition of bar or tavern "is that it does not include casinos or card rooms." R-Montana provides no legal authority to show that its alternative definitions reflect the ordinary or popular meaning of "bar or tavern." Section 28-3-501, MCA.

¶23    R-Montana's attempts to create ambiguity fall short. R-Montana's disagreement with the District Court's interpretation of the meaning of the term "bar or tavern" fails to create

7

ambiguity. *Csajkowski v. Meyers*, 2007 MT 292, ¶ 21, 339 Mont. 503, ¶ 21, 172 P.3d 94, ¶ 21. Ambiguity does not exist simply because R-Montana claims that it exists. *Phelps v. Frampton*, 2007 MT 263, ¶ 45, 339 Mont. 330, ¶ 45, 170 P.3d 474, ¶ 45. The District Court's citation to three different definitions merely illustrates that Doc Holliday's qualifies as a "bar or tavern" under any of the three definitions. The District Court correctly determined that no ambiguity exists regarding the common and ordinary understanding of a bar or a tavern. The District Court also correctly determined that the common and ordinary understanding of a bar or tavern would include a casino that serves alcohol pursuant to a state liquor license.

¶24 *Did the District Court correctly determine that Doc Holliday's was a "bar or tavern"?*

¶25 R-Montana alleges that a genuine issue of material fact exists regarding whether Doc Holliday's constitutes a "bar or tavern." R-Montana argues primarily that the District Court adopted an overly broad interpretation of the "common and ordinary" understanding of the term "bar or tavern." R-Montana provides no legal authority to support these arguments.

¶26 We already have determined that the District Court correctly decided that the common and ordinary understanding of "bar or tavern" included a casino that served alcohol pursuant to a state liquor license. ¶ 23. The question arises, therefore, whether R-Montana has raised a genuine issue of material fact as to whether Doc Holliday's meets the common and ordinary understanding of "bar or tavern."

8

¶27 The party opposing summary judgment must present substantial evidence essential to one or more elements of its case to raise a genuine issue of material fact. *Fielder v. Board of County Com'rs*, 2007 MT 118, ¶ 12, 337 Mont. 256, ¶ 12, 162 P.3d 67, ¶ 12. R-Montana's argument instead consists primarily of attacking the District Court's conclusions of law. R-Montana argues that the District Court's overly broad definition of "bar or tavern" "encompasses establishments not commonly or ordinarily thought of as bar or taverns." R-Montana lists a number of the establishments, such as sports stadiums and theaters, that it contends would fall within the District Court's overly broad definition. This argument distracts from the relevant issue.

¶28 R-Montana has an affirmative duty to respond by affidavit or other testimony containing facts that raise a genuine issue about whether Doc Holliday's constitutes a bar or tavern. *Klock v. Town of Cascade*, 284 Mont. 167, 174, 943 P.2d 1262, 1266 (1997). R-Montana points to the affidavit of William J. Nooney, the owner of Doc Holliday's. Nooney states that Doc Holliday's owns a Montana beer/wine license and sells customers alcoholic beverages and food while they gamble. We already have determined, however, that the common understanding of bar or tavern encompasses a gambling establishment that serves alcohol for on premises consumption. ¶ 23. Nooney's statement actually supports the District Court's conclusions. Nooney also states that Doc Holliday's does not intend to operate a bar or tavern and is not set up as a bar or tavern. R-Montana adds that, as Doc Holliday's landlord, it has "never considered Doc Holliday's to be a bar or tavern."

9

¶29    R-Montana's self-serving statements and assertions do not constitute facts that are "material and of a substantial nature" that would prevent summary judgment. *Duncan v. Rockwell Mfg. Co.*, 173 Mont. 382, 388, 567 P.2d 936, 939 (1977). R-Montana must prove by more than mere denial and speculation that a genuine issue of material fact exists. *Valley Bank of Ronan v. Hughes*, 2006 MT 285, ¶ 14, 334 Mont. 335, ¶ 14, 147 P.3d 185, ¶ 14. R-Montana has failed to meet its affirmative duty to respond by affidavit or other testimony containing material facts that raise genuine issues. *Klock*, 284 Mont. at 174, 943 P.2d at 1266. The District Court correctly determined that Doc Holliday's constitutes a bar or tavern.

¶30    *Did the District Court correctly determine that the doctrine of laches does not bar Dollar's claims?*

¶31    R-Montana next argues that a question of fact exists as to whether the doctrine of laches bars Dollar's claim. R-Montana contends that Dollar sat on its rights under the lease agreement despite Dollar's knowledge that Max's had sold alcohol. The party asserting the defense of laches must first prove that the other party showed a lack of diligence in asserting its rights. *In re Marriage of Deist*, 2003 MT 263, ¶ 17, 317 Mont. 427, ¶ 17, 77 P.3d 525, ¶ 17. The party must also show that it was prejudiced as a result. *Deist*, ¶ 17.

¶32    When a party brings a suit within the applicable statute of limitations, the defendant has the added burden of proving that extraordinary circumstances exist which requires the application of laches. *McGregor v. Mommer*, 220 Mont. 98, 107, 714 P.2d 536, 542 (1986). Dollar waited at most two years to assert its rights. The Legislature essentially defined

10

diligence in contract situations by setting the statute of limitations for contracts at eight years. Section 27-2-202(1), MCA; *McGregor*, 220 Mont. at 107, 714 P.2d at 542. Dollar filed its claim well within the prescribed time frame. R-Montana thus must show extraordinary circumstances that require the application of laches. *McGregor*, 220 Mont. at 107, 714 P.2d at 542.

¶33 R-Montana does not address expressly whether extraordinary circumstances existed. R-Montana merely asserts that it was prejudiced because it approved the assignment of the lease during the period when Dollar allegedly slept on its rights. R-Montana claims that it faces the loss of its tenant and the loss of lease revenue. R-Montana further contends that the District Court's order subjects it to a potential claim for breach of the lease agreement between R-Montana and Doc Holliday's.

¶34 R-Montana knew, or should have known, of the lease provision prohibiting bars or taverns. Dollar notified R-Montana of its objection before R-Montana had completed the transfer of the lease to Doc Holliday's. R-Montana nevertheless consummated the deal with Doc Holliday's without obtaining Dollar's written consent as required under the lease. Any alleged hardship that may result from R-Montana's knowing decision to transfer the lease despite Dollar's objection does not constitute prejudice or extraordinary circumstances. *Deist*, ¶ 17; *McGregor*, 220 Mont. at 107, 714 P.2d at 542.

¶35 *Did the District Court abuse its discretion when it granted Dollar's summary judgment motion without holding a hearing?*

11

¶36 R-Montana argues that the District Court erred by not allowing R-Montana an opportunity for a hearing on Dollar's motion for summary judgment. R-Montana does not dispute that it never requested a hearing on the motion. R-Montana contends that it would have requested a hearing, but the language of the District Court's scheduling order precluded it from doing so. The District Court's scheduling order stated that "[i]t shall be the responsibility of the moving party to advise the court either that the motions are submitted on briefs or to request a hearing in accordance with Rule [6] of the Local Rules of the Fourth Judicial District."

¶37 A trial court may dispense with a hearing if the moving party is "clearly entitled" to judgment as a matter of law. *SVKV*, ¶ 30 (citing *Cole v. Flathead County*, 236 Mont. 412, 419, 771 P.2d 97, 101-02). We held in *SVKV*, ¶ 35, that a district court can impose the burden on a party to request a hearing, but the court may not preclude or deter the parties from seeking a hearing. R-Montana attempts to distinguish *SVKV* on the grounds that the district court in *SVKV* had put the burden on either party to request the hearing. R-Montana further argues that the district court in *SVKV* specifically stated that the failure to request a hearing would waive the right to a hearing. *SVKV*, ¶ 14.

¶38 R-Montana advances nothing, however, that suggests that the District Court precluded or deterred it from requesting a hearing on Dollar's summary judgment motion. *SVKV*, ¶ 35. The District Court's scheduling order required Dollar, as the moving party, to request a hearing. Nothing in the District Court's scheduling order precluded or deterred R-Montana from requesting a hearing. *SVKV*, ¶ 35. In fact, R-Montana could have moved for a hearing

12

under M. R. Civ. P. 56 or Rule 6 of the Local Rules of the Fourth Judicial District. R-Montana could have filed additional affidavits at any time to establish the existence of a genuine issue of material fact.

¶39 R-Montana did not request a hearing in its brief in opposition to Dollar's motion for summary judgment. R-Montana failed to request a hearing in the two months that elapsed after it had filed the brief. More importantly, R-Montana gives no indication of what evidence it would have presented at the hearing that would have helped it to establish a genuine issue of material fact. The District Court did not abuse its discretion by granting summary judgment to Dollar without first holding a hearing under these circumstances. *SVKV*, ¶ 36.

¶40 Dollar requests attorney's fees and costs on appeal. The lease agreement entitles the prevailing party to recover reasonable attorney's fees and costs on appeal. *See Chase v. Bearpaw Ranch Ass'n*, 2006 MT 67, ¶ 25, 331 Mont. 421, ¶ 25, 133 P.3d 190, ¶ 25. We affirm the order of the District Court and remand to the District Court for a determination of Dollar's reasonable attorney's fees and costs on appeal.

/S/ BRIAN MORRIS

We Concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

13