

# FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 09 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| KROHNE FUND, LP, | No. 14-35668 |
| Plaintiff-Appellant, | D.C. No. 1:12-cv-00004-SEH |
| v. | MEMORANDUM[*] |
| STUART M. SIMONSEN; KAPIDYIA CAPITAL PARTNERS, LLC, | |
| Defendants-Appellees. | |

|  |  |
|---|---|
| KROHNE FUND, LP, | No. 14-35713 |
| Plaintiff-Appellee, | D.C. No. 1:12-cv-00004-SEH |
| v. | |
| STUART M. SIMONSEN; KAPIDYIA CAPITAL PARTNERS, LLC, | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted February 7, 2017
Seattle, Washington

Before:  FISHER, PAEZ, and CALLAHAN, Circuit Judges.

Krohne Fund, LP, is a small hedge fund operated out of California.  Stuart Simonsen developed an algorithmic computerized system for trading commodity securities.  The system is marketed under the name "XynaQuant."  Simonsen also developed a portfolio known as "Optimus" or "Optimus SLR."  Kapidyia Capital Partners, LLC ("Kapidyia")[1] marketed XynaQuant.

Krohne Fund brought claims against Defendants under Montana law for breach of contract, promissory estoppel, fraud, negligent misrepresentation, and constructive fraud.  After a bench trial, the District Court entered judgment in Defendants' favor, and Krohne Fund appealed.  Defendants cross-appealed, contesting the District Court's denial of their request to modify the scheduling order for Defendants to file third-party claims and counterclaims.

We have jurisdiction over both appeals pursuant to 28 U.S.C. § 1291.  We affirm in part, vacate in part, and remand.

1.     We review "de novo the district court's conclusions of law following a bench trial," *U.S. Sec. & Exch. Comm'n v. Jensen*, 835 F.3d 1100, 1114 (9th Cir.

---

[1] Together, Simonsen and Kapidyia are referred to as "Defendants."

2016) (citing *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir. 2004)), and review the findings of fact for clear error, *Bhd. of Maint. of Way Emps. Div./IBT v. BNSF Ry., Inc.*, 834 F.3d 1071, 1076 (9th Cir. 2016) (citing *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011)).

2.      Under Montana law, "[t]he interpretation of a contract is a question of law." *Anderson v. Stokes*, 163 P.3d 1273, 1283 (Mont. 2007) (citing *Ophus v. Fritz*, 11 P.3d 1192, 1195 (Mont. 2000); *Van Hook v. Jennings*, 983 P.2d 995, 997 (Mont. 1999)). "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Id.* (quoting Mont. Code Ann. § 28–3–301). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible . . . ." *Id.* (alteration in original) (quoting Mont. Code Ann. § 28–3–303). "If the language of the contract is unambiguous—i.e., reasonably susceptible to only one construction—the duty of the court is to apply the language as written. However, if the language of a contract is ambiguous, a factual determination must be made as to the parties' intent in entering into the contract." *Mary J. Baker Revocable Tr. v. Cenex Harvest States, Coops., Inc.*, 164 P.3d 851, 857 (Mont. 2007) (internal citations omitted). "We generally interpret the words of a contract in their ordinary and popular sense unless the parties use

3

the words in a technical sense or unless the parties give a special meaning to them by usage." *Dollar Plus Stores, Inc. v. R-Montana Assocs., L.P.*, 209 P.3d 216, 219 (Mont. 2009) (citing Mont. Code Ann. § 28–3–501).

The Managed Account Agreement ("MAA") provides that Krohne Fund's account is "to be managed by the Investment Manager [Kapidyia] on a discretionary basis in accordance with Section 2." Section 2 states that "[t]he Investment Manager, with respect to the Account and in accordance with the investment guidelines attached hereto as Appendix A, shall have full authority in its discretion to purchase, sell, sell short, tender or exchange and otherwise acquire or dispose of and trade and deal in or with futures contracts." Finally, Appendix A provides that "Krohne Capital will be trading an $8 million ($8,000,000) notional Optimus SLR account with a 30% risk budget of $2,400,000."

"Optimus SLR account" is a technical term meaning an account that makes trades pursuant to the XynaQuant software using the Optimus SLR protocol. Accordingly, the MAA requires that the trades made by the Investment Manager be made exclusively through the XynaQuant software using the Optimus SLR protocol unless Krohne Fund agreed otherwise. The District Court's conclusion that "[t]he MAA contains no language requiring Kapidyia to make trades based only on the Optimus SLR protocol or using exclusively the XynaQuant software"

4

was therefore error.  We vacate its decision on this point, and remand for the District Court to assess Krohne Fund's breach of contract claim in light of this contractual interpretation, including whether Krohne Fund authorized the manual trades that occurred on its account.

3.     Krohne Fund contends that the MAA constituted a clear and unambiguous promise for purposes of its promissory estoppel claim.  But because Krohne Fund did not rely upon the MAA to support this claim before the District Court, it has waived this argument.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010).  We thus affirm the District Court's judgment in Defendants' favor on this claim.

4.     Krohne Fund also argues that the District Court erred in entering judgment for Defendants on its deceit claims.  We need not resolve whether Krohne Fund stated, preserved, or prevailed on claims for negligent misrepresentation, fraud, or constructive fraud arising from Simonsen or Kapidyia's alleged material omissions.  Rather, we vacate the District Court's judgment on these claims and remand for further proceedings in light of our conclusion that the MAA requires the Investment Manager to make trades pursuant to the XynaQuant software using the Optimus SLR protocol.

5.    Defendants argue that the District Court abused its discretion in denying their request to modify the scheduling order, denying leave to amend their answer to assert counterclaims against Krohne Fund, and denying leave to amend to assert third-party claims.  The District Court in fact granted Defendants leave to assert counterclaims, but required that Defendants litigate any counterclaims in accordance with the scheduling order already in place.  We review the denial of a motion to amend a scheduling order under Federal Rule of Civil Procedure 16 for an abuse of discretion.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992).

"District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'"  *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)).  "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension,'" but "[i]f the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted."  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).

Viewed over the entire course of discovery in this case, Defendants' conduct was far from diligent. The deadline for leave to amend the pleadings was November 30, 2012, and discovery closed on June 28, 2013. Yet Defendants did not serve discovery requests until "the last months of 2012," and did not depose Axel Krohne until the end of January 2013. Defendants likewise waited until the spring of 2013 to seek discovery from Sean Wright and Anthony Birbilis, third-party witnesses disclosed in Krohne Fund's initial disclosures. Defendants' conduct, taken as a whole, does not demonstrate diligence. *Johnson*, 975 F.2d at 609 (citations omitted) ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."). The District Court therefore did not abuse its discretion in denying Defendants' request for leave to amend the scheduling order to permit Defendants to bring counterclaims and third-party claims.

**VACATED IN PART, AFFIRMED IN PART, and REMANDED.**

7