FILED

11/10/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0087

DA 20-0087

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 282

ROGER D. PETERS and CARRIE A. PETERS,

      Plaintiffs and Appellees,

  v.

DOUGLAS L. HUBBARD and NATHAN L. HUBBARD,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DV-17-14049
Honorable Luke Berger, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          David L. Vicevich, Lawrence E. Henke, Vicevich Law, Butte, Montana

      For Appellees:

          Margaret C. Weamer, Matthew A. Haus, Tarlow Stonecipher Weamer &
Kelly, PLLC, Bozeman, Montana

Submitted on Briefs:  September 30, 2020

Decided:  November 10, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     This case involves a Grant of Easement and Easement Agreement (Easement Agreement) between Roger D. Peters and Carrie A. Peters (the Peterses) and Douglas L. Hubbard and Nathan L. Hubbard (the Hubbards). The Agreement granted the Hubbards an easement to use a road crossing the Peterses' land as an ingress and egress from the Hubbards' property located in Beaverhead County. The Peterses rescinded the agreement in 2015. When the Hubbards continued to use the road, the Peterses filed this declaratory judgment action in 2017 with the Fifth Judicial District Court, Beaverhead County, for a declaration the recission was proper and the Hubbards' rights under the Agreement were terminated. The Hubbards raised numerous counterclaims in response, including claims a private prescriptive easement and a public prescriptive easement existed over the roadway. The District Court granted summary judgment in favor of the Peterses on all issues and granted the Peterses their attorney fees and costs according to the terms of the Easement Agreement. The Hubbards appeal the June 20, 2019 Order on Outstanding Motions and the January 24, 2020 Order on Motion for Attorneys' Fees and Costs. The Hubbards raise the following issues on appeal:

*1. Whether the Easement Agreement was unconscionable and therefore void;*

*2. Whether the District Court erred in interpreting the language of the Easement Agreement when it determined Nathan Hubbard materially breached the Agreement;*

*3. Whether the Hubbards established a private prescriptive easement across the Peterses' property covered in the Easement Agreement;*

2

*4. Whether the Hubbards established a public prescriptive easement across the Peterses' property covered in the Easement Agreement; and*

*5. Whether the District Court abused its discretion in awarding attorney fees to the Peterses.*

¶2     We affirm the District Court.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     The Hubbards purchased land in Beaverhead County in 2003. A road runs from Highway 324 past the Hubbards' property. The first mile of the road runs through state land, which is closed to motor vehicle traffic without a permit from the State. There is a locked gate near the entrance to the road from Highway 324, preventing unauthorized motor vehicle traffic on the road. The next half mile crosses property owned by the Peterses before the road reaches the Hubbards' property. After reaching the Hubbards' property, the road continues through another section of the Peterses' property before reaching more state and federal lands. On February 21, 2008, the Peterses and the Hubbards entered into the Easement Agreement. In the Agreement, the Peterses granted the Hubbards a 30-foot easement and right-of-way along the existing roadway across the half-mile of the Peterses' property leading to the Hubbards' property. The parties recorded the Easement Agreement with the Beaverhead County Clerk and Recorder. After the Hubbards and Peterses signed the Easement Agreement, the State granted the Hubbards a historic use easement for motor vehicle use over the first mile of the road.

¶4     The Easement Agreement was granted "for the purpose of providing access to, and ingress to and egress from" the Hubbards' property. It restricted use of the easement to the

Hubbards and "their family members, guests or invitees," but "[n]othing contained [in the Agreement] shall be construed in any way to afford [the Hubbards], their family members, guests or invitees the ability or the right to use said right of way to access any of the property of [the Peterses] outside of the easement." The Agreement also conditioned the Hubbards' use of the easement on compliance with "all the laws and regulations of the State of Montana including the Block Management Program and the laws and regulations of the U.S. Department of the Interior, Bureau of Land Management pertaining to the lands permitted or leased to" the Peterses. The Agreement provides a breach of either of these provisions "shall constitute a material breach of" the Easement Agreement.

¶5 In September 2014, Roger Peters notified law enforcement Nathan Hubbard was hunting on the Peterses' property without permission. Nathan Hubbard was subsequently charged with Failure to Obtain Landowner Permission for Hunting, a misdemeanor violation of § 87-6-415, MCA. Nathan was alleged to have committed the offense by accessing the easement. He was convicted in October 2014. During his deposition, Nathan acknowledged the land at issue was not enrolled in the Block Management Program for public access during the 2014 hunting season and he had not received the Peterses' permission to be on their property.

¶6 As a result of the conviction, the Peterses executed and recorded a Rescission of Easement in January 2015. The Hubbards continued to use the road to access their property despite the rescission and the Peterses filed this action for declaratory judgment on December 1, 2017, seeking a declaration the Hubbards' rights under the Easement

4

Agreement had been terminated with the 2015 rescission. The Hubbards answered the complaint and counterclaimed for private prescriptive easement, public prescriptive easement, negligence, nuisance, and punitive damages. The Peterses filed a motion for summary judgment on all issues. After hearing oral argument, the District Court granted summary judgment on all issues in favor of the Peterses on June 20, 2019.

¶7 Upon the Peterses' motion to recover attorney fees and costs under the terms of the Easement Agreement, the District Court granted the Peterses their fees and costs. The court issued a detailed order awarding a portion of the requested costs and reducing the requested fee award by 25 percent after analyzing the factors from *Plath v. Schonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, 64 P.3d 984.

**STANDARD OF REVIEW**

¶8 Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c). We review an order granting summary judgment by applying the same criteria as the district court. *Lemont Land Corp. v. Rogers*, 269 Mont. 180, 183, 887 P.2d 724, 726 (1994). The party seeking summary judgment has the initial burden of establishing the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Gonzales v. Walchuk*, 2002 MT 262, ¶ 9, 312 Mont. 240, 59 P.3d 377. Once the movant's burden is met, the nonmoving party "must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact." *Gonzales*, ¶ 9. "Substantial credible evidence" is evidence "a reasonable mind might accept as

5

adequate to support a conclusion." *Seltzer v. Morton*, 2007 MT 62, ¶ 94, 336 Mont. 225, 154 P.3d 561.

¶9 We review a district court's order granting or denying attorney fees and costs for an abuse of discretion. *James Talcott Constr., Inc. v. P. & D. Land Enters.*, 2006 MT 188, ¶ 27, 333 Mont. 107, 141 P.3d 1200.

## DISCUSSION

¶10 *1. Whether the Easement Agreement was unconscionable and therefore void.*

¶11 The Hubbards first argue the Easement Agreement as interpreted by the District Court is unconscionable and therefore void. As the Peterses point out, the Hubbards raise this argument for the first time on appeal. The general rule in Montana is this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory. *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100. We, therefore, decline to address whether the Easement Agreement is unconscionable. We note, however, the Hubbards' arguments before this Court undermine their contention the parties were in unequal bargaining positions at the time they entered into the agreement. Before this Court, the Hubbards argue the State required the Hubbards to obtain a documented easement over the Peterses' property to finalize the easement across state lands and "[t]his could be done in the form of a court ordered prescriptive easement, or an express easement agreement for that section of road—the Parties chose the latter for time and convenience, hence the Easement Agreement." Thus, the Hubbards admit they made

6

a strategic decision to enter the agreement on the advice of counsel to avoid the cost of litigating an alleged prescriptive easement.

¶12   *2. Whether the District Court erred in interpreting the language of the Easement Agreement when it determined Nathan Hubbard materially breached the Agreement.*

¶13   The District Court focused on two provisions of the Easement Agreement in its decision finding Nathan Hubbard materially breached the terms of the Agreement:  The provision restricting the Hubbards from using the easement to access any property of the Peterses outside the easement and the provision requiring the Hubbards to comply with the laws and regulations of the State of Montana, including the Block Management Program. The District Court explained:  "These terms demonstrate the Hubbards consented to a rescission of the [Easement Agreement] in the event they, or their family members, guests, or invitees, materially breached the agreement by failing to use the easement as intended or comply with Montana law."  The court found the record was "replete with evidence Nathan Hubbard was convicted of a criminal offense stemming from his use of the [easement], including his own admissions."  The court found Nathan's conviction violated the terms of the Easement Agreement, the Peterses properly rescinded the agreement, and the Hubbards' rights under the agreement were terminated.

¶14   The Hubbards maintain Nathan Hubbard's citation related to his use of the roadway across the Peterses' property located *past* the Hubbards' property and did not occur on the Peterses' property located *before* the Hubbards' property over which the easement runs and to which the Agreement pertains.  Further, the Hubbards insist the provision of the

7

agreement requiring their compliance with the laws and regulations of the State of Montana only pertained to "lands permitted or leased to" the Peterses and not land the Peterses owned in fee simple. They argue Nathan's citation for failure to obtain landowner permission to hunt is not a material breach of the Agreement because the violation did not occur on land covered by the Easement Agreement or on "lands permitted or leased to" the Peterses. Alternatively, they argue the terms of the Agreement are ambiguous and the issue cannot be decided on summary judgment because there is an issue of material fact whether they intended for the Peterses to be able to rescind the Easement Agreement for a hunting law violation occurring on the Peterses' land.

¶15 The breadth and scope of an easement are determined by the actual terms of the grant. *Anderson v. Stokes*, 2007 MT 166, ¶ 32, 338 Mont. 118, 163 P.3d 1273. The interpretation of a written grant of an interest in real property is governed by the rules of contract interpretation. *Anderson*, ¶ 32. The interpretation of a contract and whether an ambiguity exists in a contract are questions of law. *Anderson*, ¶ 33. A contract term is ambiguous when the language of the contract may be reasonably subject to at least two different interpretations. *Dollar Plus Stores, Inc. v. R-Montana Assocs., L.P.*, 2009 MT 164, ¶ 17, 350 Mont. 476, 209 P.3d 216. "The mere fact that the parties disagree as to the meaning of a contract provision fails to create an ambiguity." *Dollar Plus Stores, Inc.*, ¶ 17. If the language of a contract is reasonably susceptible to only one interpretation, the duty of the court is simply to apply the language as written. *Anderson*, ¶ 33. "[T]he

8

intention of the parties is to be ascertained from the writing alone if possible." Section 28-3-303, MCA.

¶16 The Easement Agreement provided the Hubbards "access to, and ingress to and egress from" their property in Beaverhead County. The Agreement further specified "Nothing contained herein shall be construed in any way to afford [the Hubbards] the ability or the right to use said right of way to access any of the property of [the Peterses] outside the easement" and the Hubbards "agree to comply with all the laws and regulations of the State of Montana including the Block Management Program and the laws and regulations of the U.S. Department of the Interior, Bureau of Land Management pertaining to the lands permitted or leased to" the Peterses. The Agreement specifically provided violation of either of these terms was a material breach of the Agreement, allowing the Peterses to "immediately rescind th[e] grant of easement and agreement without any further notice or proceedings."

¶17 As the District Court found, the record is replete with evidence—including Nathan's own admissions—Nathan accessed property owned by the Peterses outside of the easement and violated the laws of the State of Montana, including the Block Management Program. Although the Hubbards claim there is an issue of material fact whether they intended Nathan's hunting violation to allow for rescission of the agreement, contract interpretation is a question of law and we ascertain the intention of the parties in the first instance from the language of the contract itself. The Agreement specified the purpose of the easement was to provide access to the Hubbards' property and did not allow the Hubbards to access

the Peterses' property outside the easement. Further, it required the Hubbards to comply with the laws of the State of Montana "including the Block Management Program." Given the specific inclusion of the Block Management Program and the restriction on accessing Peterses' property outside of the easement, it is not plausible the Agreement required the Hubbards to comply only with Montana laws and regulations pertaining to "lands permitted or leased to" the Peterses, as the Hubbards argue, leaving the Hubbards free to violate Montana laws and regulations (including the Block Management Program) on property the Peterses owned in fee simple.[1] Nathan accessed property of the Peterses outside of the easement and violated the laws and regulations of the State of Montana, including the Block Management Program. This violation is clearly within the contemplation of the terms allowing rescission of the Easement Agreement.

¶18     3. *Whether the Hubbards established a private prescriptive easement across the Peterses' property covered in the Easement Agreement.*

---

[1] We also do not agree with the Hubbards' arguments regarding the grammatical reading of the provision at issue. The Hubbards argue the postpositive modifier "pertaining to the lands permitted or leased to Grantors" applies to both "the laws and regulations of the State of Montana" and "the laws and regulations of the U.S. Department of the Interior, Bureau of Land Management." But a reading of the whole provision reveals each referent is separately modified. The Hubbards agreed "to comply with all the laws and regulations of the State of Montana *including the Block Management Program* and the laws and regulations of the U.S. Department of the Interior, Bureau of Land Management *pertaining to the lands permitted or leased to*" the Peterses. (Emphasis added.) "[P]ertaining to the lands permitted or leased" modifies "the laws and regulations of the U.S. Department of the Interior, Bureau of Land Management" and not "the laws and regulations of the State of Montana." *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 152 (2012) (discussing the nearest reasonable referent canon of grammatical interpretation).

¶19　The District Court found the Hubbards' private prescriptive easement claim failed because the Easement Agreement rendered their use of the easement permissive and the Hubbards provided no evidence of adverse use to counter this evidence.

¶20　The Hubbards argue the Easement Agreement did not extinguish their pre-existing private prescriptive easement over the Peterses' property, because extinguishing an existing prescriptive easement by reverse adverse possession is a heavy burden that requires the same burden as for establishing a prescriptive easement. The Hubbards argue the Peterses failed to meet their burden of establishing by clear and convincing evidence the Hubbards intended to extinguish their private prescriptive easement by entering into the Easement Agreement.

¶21　"An easement by prescription is created by operation of law." *Heller v. Gremaux*, 2002 MT 199, ¶ 12, 311 Mont. 178, 53 P.3d 1259. A person claiming a private prescriptive easement must establish by clear and convincing evidence his use of the roadway was: (1) open and notorious; (2) exclusive; (3) adverse; (4) continuous; and (5) uninterrupted for the complete statutory period of five years. *Heller*, ¶ 12. Once the claimant has established all elements of prescriptive use, the burden shifts to the opposing party to prove permissive use or license. *Hitshew v. Butte/Silver Bow County*, 1999 MT 26, ¶ 21, 293 Mont. 212, 974 P.2d 650. "If a landowner shows permissive use, no easement can be acquired because the theory of prescriptive easement is based on adverse use." *Hitshew*, ¶ 21.

11

¶22     Before this Court, the Hubbards argue the Easement Agreement did not extinguish pre-existing prescriptive easement rights.  This argument, however, fails to acknowledge the Hubbards failed to provide evidence to establish the existence of a pre-existing private prescriptive easement or to raise an issue of material fact regarding the elements necessary to establish a private prescriptive easement before the District Court.  The District Court determined the Hubbards did not demonstrate the existence of a private prescriptive easement across the Peterses' property because they failed to produce any evidence demonstrating their use of the road was adverse in light of the Easement Agreement with the Peterses granting them permission to use the roadway to access the Hubbards' property. On appeal, the Hubbards cite to the allegations in their answer and counter-complaint, but fail to point to any evidence the District Court overlooked in the record that establishes their use or the historic use of the road across the Peterses' property was adverse, rather than permissive.  Having failed to meet their burden on appeal, we affirm the District Court.

¶23     *4. Whether the Hubbards established a public prescriptive easement across the Peterses' property covered in the Easement Agreement.*

¶24     The District Court found "no evidence exists in the record to support Hubbards' public prescriptive easement claim."  The Hubbards argue on appeal the District Court erred in determining no genuine issue of material fact exists regarding the existence of a public prescriptive easement.   The Hubbards point out that to extinguish a public prescriptive easement an assertion of a right hostile to the easement must be brought to the public's attention and the use must continue for the full prescriptive period, citing *Public Lands Access Ass'n v. Boone & Crockett Club Foundation, Inc.*, 259 Mont. 279, 856 P.2d

12

525 (1993). They maintain the Easement Agreement did not bring to the attention of the public that the Peterses asserted a right to the road hostile to the public.

¶25 The elements for finding a public prescriptive easement are the same as for a private prescriptive easement except the element of exclusivity is not required. Thus, a party claiming a public prescriptive easement must establish open, notorious, adverse, continuous, and uninterrupted use by the public of the claimed easement for the statutory five year period. *Hitshew*, ¶ 16.

¶26 Like their arguments regarding the private prescriptive easement, the Hubbards' arguments fail to recognize the complete lack of evidence in the record to establish the existence of a pre-existing public prescriptive easement or to raise an issue of material fact regarding the elements necessary to establish a public prescriptive easement. On appeal, the Hubbards fail to point to any evidence in the record the District Court overlooked that would support a public prescriptive easement for motorized vehicles across the Peterses' property, either historically or in the present. The Hubbards instead cite to the allegations in their complaint, the use of the road by the Hubbards and their invited guests under the Easement Agreement, and argument from counsel. This is not sufficient to meet their burden in responding to a motion for summary judgment. "A party opposing summary judgment must present facts of a substantial nature and cannot rely on speculative, fanciful, or conclusory statements." *Hitshew*, ¶ 21. The District Court, therefore, properly granted summary judgment against the Hubbards on this issue in this litigation.

13

¶27　We note we do not agree with the Hubbards' contentions the District Court's decision uses the Easement Agreement to strip the public of pre-existing prescriptive easement rights to access interior state and federal lands beyond the Hubbards' property. Members of the general public were not a party to the Easement Agreement and such Agreement does not strip any existing prescriptive easement rights from the public. The District Court's decision is carefully limited to the use of motor vehicles over the half-mile of road at issue in the Easement Agreement. The Hubbards failed to provide sufficient evidence in this particular suit of public use of motor vehicles over that road, especially in light of their admissions the gate off Highway 324 has been kept locked since before they purchased the property in 2003, blocking unauthorized motor vehicle access on the road. The District Court rightly granted summary judgment to the Peterses in this litigation.

¶28　*5. Whether the District Court abused its discretion in awarding attorney fees to the Peterses.*

¶29　The Peterses moved to recover attorney fees and costs under the terms of the Easement Agreement, and the District Court granted the motion. After a hearing, the court issued a detailed order awarding a portion of the requested costs and fees. The Hubbards challenge the District Court's interpretation of the contractual language providing for the recovery of attorney fees and the reasonableness of the fees awarded.

¶30　Contractual or statutory authority must exist to support an award of attorney fees. *Mountain W. Farm Bureau Mut. Ins. Co. v. Hall*, 2001 MT 314, ¶ 13, 308 Mont. 29, 38 P.3d 825. If contractual language provides for the recovery of attorney fees, we review the fee award for an abuse of discretion. *James Talcott Constr., Inc.*, ¶ 27. "The reasonableness

14

of attorney fees must be ascertained under the facts of each case." *Plath*, ¶ 36. In determining what constitutes reasonable attorney fees, a district court must consider the factors this Court articulated in *Plath* along with any other relevant factor in the case. *Plath*, ¶ 36.

¶31    The Easement Agreement provides: "In the event this grant of easement is rescinded and subsequent legal action is brought, the prevailing party shall be entitled to recover reasonable attorney's fees, costs and disbursements reasonably incurred therein."

¶32    The Hubbards first argue the District Court erred in awarding attorney fees for work completed before the court granted summary judgment on June 20, 2019. They maintain the Easement Agreement was not properly rescinded until the District Court issued its order granting the Peterses' motion for summary judgment. They theorize the litigation prior to June 20, 2019, was not conducted "[i]n the event the grant of easement is rescinded," but rather was conducted to determine if the Easement Agreement would be rescinded. This argument finds no support in the record. The Easement Agreement provided: "In the event of breach . . . the [Peterses] may immediately rescind this grant of easement and agreement without any further notice or proceedings." The Peterses executed and recorded a Rescission of Easement in January 2015 and in its June 20, 2019 order, the District Court found "the Easement Agreement *was* properly rescinded." (Emphasis added.) Thus, the District Court properly awarded fees incurred subsequent to the rescission of the agreement in 2015.

¶33 The Hubbards next argue the award of attorney fees was not reasonable under the *Plath* factors. The District Court issued a lengthy and detailed order regarding the attorney fees requested. The order discusses the report and testimony from each party's expert witness. After weighing the evidence presented, considering each of the individual factors laid out in *Plath*, and taking the Hubbards' objections into account, the District Court reduced the fees claimed by the Peterses by 25 percent. Our review of the record does not demonstrate the District Court acted arbitrarily or abused its discretion in applying the *Plath* factors in light of the evidence presented and objections raised. The Hubbards fail to outline any portion of the District Court's award that is arbitrary or exceeds the bounds of reason. Rather, the Hubbards' appeal appears to seek de novo review of the evidence and a reweighing of the factors. We decline to do so.

## CONCLUSION

¶34 The District Court is affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA

16